GOODRICH *v.* EDWARDS, UNITED STATES COLLECTOR OF INTERNAL REVENUE FOR THE SECOND DISTRICT OF THE STATE OF NEW YORK.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 663.   Argued March 10, 11, 1921.—Decided March 28, 1921.

1. Profit realized upon the sale of stocks held as an investment is income, and so much of it as accrued after March 1, 1913, is taxable under the Income Tax Laws of 1916, 1917, and the Sixteenth Amendment. P. 534. *Merchants' Loan & Trust Co.* v. *Smietanka, ante,* 509.
2. The statute imposes the income tax on the proceeds of a sale of personal property to the extent only that gains are derived therefrom by the vendor; and § 2 (c) is applicable only where a gain over the original capital investment has been realized after March 1, 1913. P. 535.

Reversed in part; affirmed in part.

THE case is stated in the opinion.

*Mr. William D. Guthrie,* with whom *Mr. Langdon P. Marvin, Mr. Henry M. Ward, Mr. Herbert Pope* and *Mr. Rush C. Butler* were on the briefs, for plaintiff in error:

The increase in value of property held for investment, when realized by sale, is not "income" within the meaning of the Sixteenth Amendment. Income here is to be taken as having the meaning commonly understood and judicially defined. *Eisner* v. *Macomber,* 252 U. S. 189; *McCulloch* v. *Maryland,* 4 Wheat. 316, 407.

Prior to the Amendment, income had been judicially defined by this court in *Gray* v. *Darlington,* 15 Wall. 63, by the highest courts of many of the States in the law of estates and trusts, and by the courts of Great Britain

and of the British Dominions and Colonies in construing their income tax laws, as excluding increment of value realized upon the sale of property held for investment. To the same effect as *Gray* v. *Darlington*, was the opinion of Mr. Justice Grier in *Bennet* v. *Baker* (footnote to 15 Wall. 67), and the judgment of the Circuit Court in *Chicago, Burlington & Quincy R. R. Co.* v. *Page*, 1 Biss. 461, 466. This court followed and approved *Gray* v. *Darlington* in *Lynch* v. *Turrish*, 247 U. S. 221.

It must reasonably be presumed that Congress, when it proposed the Sixteenth Amendment, and the state legislatures, when they ratified it, intended to adopt this judicial interpretation and definition of the word income.

The conclusion is, therefore, fully warranted that both those who proposed the Sixteenth Amendment and those who ratified it understood and appreciated the force and effect of the decision of this court in *Gray* v. *Darlington*, and acted upon the belief that such a deliberate and authoritative definition of "income" and "capital" for purposes of taxation would constitute at once the measure and the limitation of the extension of the power of Congress "to lay and collect taxes on incomes . . . without apportionment," so as not to conflict with the constitutional provisions requiring direct taxes on property to be apportioned.

Particularly must it be apparent that this was the understanding of the state legislatures, since they knew that it was universally held to be the law in the United States that a gain realized by a trustee upon the sale of a part of the *corpus* or principal of a trust fund constituted capital or principal and not income, and belonged to the remainderman and not to the life tenant, when the life tenant was, by the express terms of the instrument creating the trust, entitled to all income arising from the trust estate.

That this common and familiar distinction did not

directly appertain to taxation, is quite immaterial. Indeed, this court has so held in *Towne* v. *Eisner*, 245 U. S. 418, 426.

For many years prior to the adoption of the Sixteenth Amendment, the British courts had held and have since continued to hold that capital in any form, whether the realized increment of value upon the sale of property by an individual or of capital assets by a corporation, is not taxable as income under the British income tax laws which have been in force since 1842. This British authority is peculiarly important in view of the well-known fact that American income tax legislation came to us from England. and has always been in large part patterned after the English enactments (Black, Income Taxes, 4th ed., § 30); and it should, therefore, reasonably be presumed that both the Sixteenth Amendment and the income tax acts were framed in the light of the British precedents, and "that Congress, in adopting the language of the English act, had in mind the constructions given to these words by the English courts, and intended to incorporate them into the statute." *Interstate Commerce Commission* v. *Baltimore & Ohio R. R. Co.*, 145 U. S. 263, 284. See also *Interstate Commerce Commission* v. *Delaware, Lackawanna & Western R. R. Co.*, 220 U. S. 235, 253–4; *McDonald* v. *Hovey,* 110 U. S. 619, 628. The rule to this effect, thus settled in England and· Scotland, also prevails in the British Colonies and Dominions.

Prior, therefore, to 1909 when the Sixteenth Amendment was proposed and 1913 when it was finally adopted, the word "income " was generally understood and had been quite generally defined as having a meaning distinct from, and exclusive of, the increment of value realized upon the sale of property held for. investment, by an individual, or the capital assets of a corporation.

If the views expressed by this court subsequent to 1913 be analyzed, this conclusion is strongly reinforced.

The so-called "income" which measured the corporation tax was not and was not intended to be the "income" signified and intended in and by the Sixteenth Amend'ment, and it has been repeatedly recognized by this court that the senses in which the terms were used are different in the two cases. *Stratton's Independence* v. *Howbert*, 231 U. S. 399, 414, 416, and other cases.

Where, on the other hand, a true income tax act was involved and capital profits were realized upon the change of an investment under circumstances in nowise related to the carrying on of business, as in *Gray* v. *Darlington*, 15 Wall. 63; or where under a true income tax law capital profits were realized, not in the course of the business, but upon the winding-up and termination thereof, which is after all but another mode or form of changing an investment, as was the case in *Lynch* v. *Turrish*, 247 U. S. 221, the court in each instance declared that the increment remained capital, despite its conversion or transmutation into cash. And this court has recently stated that "enrichment through increase in value of capital investment is not income in any proper meaning of the term." *Eisner* v. *Macomber*, 252 U. S. 214, 215.

An increase in the value of an investment, not made or held as a part of any trade or business transaction, is plainly "a gain accruing to capital" and a "growth or increment of value in the investment," within the definition of the court in *Eisner* v. *Macomber, supra.* In no proper sense does it proceed from the property, as do rents, interest, dividends and other familiar forms of income; and such a gain, when realized, cannot properly be described as "severed from the capital" for it remains an integral part of the capital as much as if it had not been converted.

Before conversion into money, no one would question that the property was capital, although it then included the enhancement of value. Bearing in mind that the

Sixteenth Amendment is not to be "extended by loose construction" and that it is "essential to distinguish between what is and what is not 'income' . . . according to truth and substance, without regard to form" (*Eisner* v. *Macomber*, 252 U. S. 206), we must find some distinct benefit to the taxpayer as income directly attributable to the conversion, before it can be declared that what the taxpayer now has is, not merely his capital, but income instead. Otherwise, the mere fact of conversion, that is, the form alone, would prevail over the substance and be made the decisive factor. Yet the court has declared, although in considering the Act of 1909, that "subsequent change of form by conversion into money did not change the essence." *Doyle* v. *Mitchell Brothers Co.*, 247 U. S. 187.

Mere conversion of capital investments and change into money cannot, therefore, be determinative, even though more money is thus actually brought to hand than was originally put into the investment several years before. Otherwise, *Lynch* v. *Turrish*, 247 U. S. 221, was wrongly decided.

The Income Tax Law of 1916 does not levy a tax upon the increment in value of capital assets when realized by sale.

As the sale or conversion of the stock of the Goodrich Company represented an actual loss, no part of the proceeds was taxable as income of the taxpayer.

*The Solicitor General* for defendant in error:

Prior to the adoption of the Sixteenth Amendment, the word "income," as understood by the legislative, the executive, and the judicial branches of the Government, included gains or profits derived from the sale of capital assets. Act of August 5, 1861, c. 45, 12 Stat. 292; Seligman, Income Tax, p. 435; Act of July 1, 1862, c. 119, 12 Stat. 432, 473; Cong. Globe, May 27, 1864, p.

2516; Act of June 30, 1864, c. 173, 13 Stat. 223; Act of March 3, 1865, c. 78, 13 Stat. 469; Act of March 2, 1867, c. 169, 14 Stat. 471; *Gray* v. *Darlington,* 15 Wall. 63, 65, 66; Act of August 27, 1894, c. 349, 28 Stat. 509; *Pollock* v. *Farmers' Loan & Trust Co.,* 158 U. S. 601; Corporation Excise Tax Act of 1909, c. 6, 36 Stat. 11, 112; T. D. 1571; T. D. 1606, § 71; T. D. 1675, Art. 55; T. D. 1742; *Stratton's Independence* v. *Howbert,* 231 U. S. 399, 415; *Doyle* v. *Mitchell Brothers Co.,* 247 U. S. 179, 183, 185, 187; *Hays* v. *Gauley Mountain Coal Co.,* 247 U. S. 189, 191–193; *Lynch* v. *Turrish,* 247 U. S. 221, 226; *Eisner* v. *Macomber,* 252 U. S. 189, 207.

In the framing of state income tax laws it has been customary to treat income as including gains derived from the sale of capital assets.

The cases under the Act of 1913 dealing with the distribution of corporate assets among stockholders are in no way in conflict with the Government's contention in this case. *Lynch* v. *Hornby,* 247 U. S. 339; *Eisner* v. *Macomber, supra; Lynch* v. *Turrish, supra; Southern Pacific Co.* v. *Lowe,* 247 U. S. 330; *Peabody* v. *Eisner,* 247 U. S. 347. These cases establish the proposition that gains derived from the sale of capital assets constitute income when received.

Investments are ordinarily made in contemplation of two kinds of returns,—one current income while the investment is held, and the other the profit to be realized, through appreciation in value, upon the final disposition of the investment.

The debates in Congress, when the Act of 1913 was under consideration, do not show an understanding that such gains as are now in question were not understood to be income.

The tax on gains derived from the sale of property is not confined to such gains arising from transactions conducted as a part of one's business or trade.

Whether under the decisions of the English courts gains of this kind are treated as income can have no determining effect in deciding the question now at issue.

The fact that under the laws of various States gains derived from the sale of capital assets are, as between a life tenant and a remainderman, treated as principal and not as income, affords no reason for saying that such gains are not income which Congress may tax.

The construction of the Act of 1916, under which the taxes in this case were collected, does not work any more hardship or injustice than is inevitable under any general tax law.

But the statute imposes the tax, upon a sale of property, only where there is a gain over the original investment.

*Mr. Hoke Smith* and *Mr. T. P. Gore,* by leave of court, filed a brief as *amici curiæ.*

Mr. Justice Clarke delivered the opinion of the court.

The plaintiff in error sued the defendant, a collector of Internal Revenue, to recover income taxes assessed in 1920 for the year 1916 and paid under protest to avoid penalties. A demurrer to the complaint was sustained and the constitutional validity of a law of the United States is so involved, that the case is properly here by writ of error. *Towne* v. *Eisner,* 245 U. S. 418.

Two transactions are involved.

(1) In 1912 the plaintiff in error purchased 1,000 shares of the capital stock of a mining company for which he paid $500. It is averred that the stock was worth $695 on March 1, 1913, and that it was sold in March, 1916, for $13,931.22. The tax which the plaintiff in error seeks to recover was assessed on the difference between the

value of the stock on March 1, 1913, and the amount for which it was sold.

(2) The plaintiff in error being the owner of shares of the capital stock of another corporation, in 1912 exchanged them for stock, in a reorganized company, of the then value of $291,600. It is averred and admitted that on March 1, 1913, the value of this stock was $148,635.50, and that it was sold in 1916 for $269,346.25. Although it is thus apparent that the stock involved was of less value on March 1, 1913, than when it was acquired, and that it was ultimately sold at a loss to the owner, nevertheless the collector assessed the tax on the difference between the value on March 1, 1913, and the amount for which it was sold.

The plaintiff in error seeks to recover the whole of these two assessments.

The same contention is made with respect to each of these payments as was made in No. 608, *Merchants' Loan & Trust Co.* v. *Smietanka*, this day decided, *ante*, 509, viz, that the amounts realized from the sales of the stocks were in their inherent nature capital as distinguished from income, being an increment in value of the securities while owned and held as an investment and therefore not taxable under the Revenue Act of 1916 (39 Stat. 756) as amended in 1917 (40 Stat. 300) or under any constitutional law.

With respect to the first payment. It is plain that this assessment was on the profit accruing after March 1, 1913, the effective date of the act, realized to the owner by the sale after deducting his capital investment. The question involved is ruled by No. 608, *supra*, and the amount was properly taxed.

As to the second payment. The Government confesses error in the judgment with respect to this assessment. The stock was sold in the year for which the tax was assessed for $22,253.75 less than its value when it was

acquired, but for $120,710.75 more than its value on March 1, 1913, and the tax was assessed on the latter amount.

The act under which the assessment was made provides that the net income of a "taxable person shall include *gains*, profits, and income derived from . . . sales, or dealings in property, whether real or personal, . . . or *gains* or profits and income derived from any source whatever." (39 Stat. 757; 40 Stat. 300, 307.)

Section 2 (c) of this same act provides that "for the purpose of ascertaining the *gain* derived from a sale or other disposition of property, real, personal, or mixed, acquired before March first, nineteen hundred and thirteen, the fair market price or value of such property as of March first, nineteen hundred and thirteen, shall be the basis for determining the amount of such *gain* derived."

And the definition of "income" approved by this court is: "'The *gain* derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets." *Eisner* v. *Macomber*, 252 U. S. 189, 207.

It is thus very plain that the statute imposes the income tax on the proceeds of the sale of personal property to the extent only that *gains* are derived therefrom by the vendor, and we therefore agree with the Solicitor General that since no gain was realized on this investment by the plaintiff in error no tax should have been assessed against him.

Section 2 (c) is applicable only where a gain over the original capital investment has been realized after March 1, 1913, from a sale or other disposition of property.

It results that the judgment of the District Court as to the first assessment, as we have described it, is affirmed, that as to the second assessment it is reversed, and the case

is remanded to that court for further proceedings in conformity with this opinion.

*Reversed in part.*

*Affirmed in part.*

MR. JUSTICE HOLMES and MR. JUSTICE BRANDEIS, because of prior decisions of the court, concur only in the judgment.