THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN R. KEIM, Relator, *v.* JAMES A. WENDELL, as Comptroller of the State of New York, Respondent.

Third Department, March 17, 1922.

Taxation — income tax — losses deductible on transaction commencing before January 1, 1919, cannot be greater than actual loss or loss sustained during taxable year — Tax Law, § 353, covers all transactions entered into for profit — sale of stock short before January 1, 1919 — sale covered during 1919 at loss — loss deductible is amount representing actual loss on transaction or difference between market price of stock on January 1, 1919, and purchase price to cover, whichever is less.

Losses deductible from gross income for the purpose of determining the net income subject to taxation on a transaction commencing before January 1, 1919, and terminating thereafter, cannot be greater than the actual loss incurred on the whole transaction, nor than the loss sustained during the taxable year, that is, after January 1, 1919.

While the language used in section 353 of the Tax Law, in declaring how gains and losses shall be ascertained, mentions only a purchase and subsequent sale, the intent and meaning of the Legislature was to cover all transactions in which profits are had or losses sustained in dealing in property, and the Legislature did not intend to exclude from its rule all transactions entered into for profit other than a purchase and subsequent sale.

Accordingly, said section is applicable to the case of a short sale of corporate stock prior to January 1, 1919, and a purchase at a loss to cover said sale after January 1, 1919; such a transaction is not distinguishable from a loss sustained from a long purchase of corporate stock and a subsequent sale.

The relator, who sold corporate stock short during 1918 and purchased corporate stock in 1919 at an advance in price to cover his short sale, had the right to deduct from his gross income, for the purpose of determining his net income, an amount representing the actual loss on the entire transaction or the difference between the market price of the stock on January 1, 1919, and the price that he paid for stock purchased to cover, whichever was less.

HINMAN, J., and COCHRANE, P. J., dissent in part, with opinion.

CERTIORARI issued out of the Supreme Court and attested on the 8th day of April, 1921, directed to James A. Wendell, as Comptroller of the State of New York, commanding him to certify and return to the office of the clerk of the county of Albany all and singular his proceedings had relating to his adjustment of an account for income taxes for the taxable year 1919 against the relator, under article 16 of the Tax Law, and in revising said account.

The relator had three stock transactions; the first and second were short sales of securities made in 1918 and " covered " in 1919; the third was a purchase of securities in 1918 and a sale thereof in 1919.

The first transaction: The relator sold short during 1918 securities totaling in market value $363,220. On January 1, 1919, the market value of these securities was $378,687.50. He " covered " (that is, bought in like securities in like amounts) in 1919 for $411,917.50. The Comptroller refused to allow deduction for the loss due to the increase in market value of the securities between the time of the sale and January 1, 1919, but did allow for the loss sustained by the increase in their market value from January 1, 1919, to the time of the purchase in 1919, $33,230.

The second transaction: During 1918 the relator sold short securities aggregating in market value $159,107.50. The market value of these securities on January 1, 1919, was $156,812.50. He covered in 1919, paying therefor $172,515. Between the time of the short sale and January 1, 1919, there was a profit, had the relator then covered, of $2,295. But at the time he did cover in 1919 there was a loss upon the transaction of $13,407.50. The Comptroller allowed deduction for the loss sustained between January 1, 1919, and the time relator covered, $15,702.50. It is conceded now that the allowance in this transaction should have been $13,407.50, the amount of the actual loss.

The third transaction: During 1918 the relator purchased securities for $121,475. The market value of these securities on January 1, 1919, was $102,625. He sold these securities during 1919 for $76,251.35. The Comptroller allowed deduction for the loss sustained, being the difference in value of the securities on January 1, 1919, and their value at the time of the sale, $26,373.15.

*Meyer Moskowitz,* for the relator.

*Charles D. Newton,* Attorney-General [*James S. Y. Ivins* and *Laurence Graves* of counsel], for the respondent.

VAN KIRK, J.:

No question arises as to the third transaction involving the purchase of securities before January 1, 1919, and a sale of those

securities during 1919. It is conceded that the decision in *People ex rel. Klauber* v. *Wendell* (196 App. Div. 827; affd., 232 N. Y. 549) controls. But it is claimed that a different rule must be applied as to the first and second transactions, involving a short sale of securities prior to January 1, 1919, and the covering of the short sale during 1919. The relator claims that he should be allowed to deduct the entire loss sustained in the transaction, while the Comptroller claims that the relator may deduct that part only of the loss which accrued after January 1, 1919. The position of the relator seems to be that no loss in either short sale transaction was incurred until his entire loss was taken; that is, that no part of the loss suffered accrued during 1918. This question requires the construction of three sections of the Tax Law, sections 351, 359 and 360, as added by chapter 627 of the Laws of 1919. These three sections, so far as their contents are essential to solving the question presented, contain the following: Section 351 of the Tax Law, entitled " Imposition of income tax," imposes a tax upon every resident of the State with respect to his entire " net income as herein defined." " Such tax shall first be levied, collected and paid in the year nineteen hundred and twenty upon and with respect to the taxable income for the calendar year nineteen hundred and nineteen, or for any taxable year ending during the year nineteen hundred and nineteen." Section 359 of the Tax Law defines " gross income: " " The term ' gross income: ' 1. Includes gains, profits and income derived from  *  *  *  dealings in property whether real or personal, growing out of the ownership or use of or interest in such property  *  *  *  or gains or profits and income derived from any source whatever  *  *  *." Section 360 of the Tax Law (as amd. by Laws of 1920, chap. 693) provides: " Deductions. In computing net income there shall be allowed as deductions:  *  *  *  5. Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit,  *  *  *." By these three sections the tax is imposed upon the entire net income of the taxpayer and is to be first levied and collected in the year 1920 with respect to the taxable income for the calendar year 1919. Then the elements of the gross income are defined and the deductions from this gross income, that are to be allowed for the purpose of ascertaining the net income, are identified and defined. So that, in the three sections, we have a complete scheme for ascertaining the entire net income on which the tax is to be levied and collected. It is clearly provided that, in ascertaining this net income, not only gains and profits, but also the losses, which must be allowed as deductions from gross income, must be confined to those which accrued during the calendar year

1919. And it was evidently realized by the Legislature that many transactions which were closed in 1919 were instituted prior to January 1, 1919; that securities are often held for a long period of time, during which there are very wide variations in the market value of the securities. Many stocks which twenty years ago were selling at a few dollars per share, as for example Union Pacific common and Atchison common, in 1919 were selling near or above par. It was not in the intention of the Legislature to impose the burden of a tax to be collected in 1920 upon profits, or to allow deductions for losses, which had accrued for years prior to January 1, 1919; and the Legislature, to aid in the construction of the sections above cited, and to declare the rule for ascertaining the gain or loss, in transactions begun before January 1, 1919, and closed in 1919, to be followed in calculating the net income for the year 1919, included in the Tax Law section 353, by which it expressed the legislative intent for ascertaining such gains and losses. If section 353 had not been in the statute the intent would have been the same, and the courts would have been called upon to construe sections 351, 359 and 360 to determine what was meant by gains or losses which accrued during the taxable year. We have no reason to believe that the construction of the act by the courts, had section 353 not been included therein, would have been other than that announced with the aid of section 353. This section 353, so far as essential to this case, contains the following: "Ascertainment of gain and loss. For the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal or mixed, the basis shall be first, in case of property acquired before January first, nineteen hundred and nineteen, the fair market price or value of such property, as of January first, nineteen hundred and nineteen, and, second, in case of property acquired on or after that date, the cost thereof; * * *." The amendment of this section by chapter 573 of the Laws of 1921 declared the construction to be put upon this section in connection with the other sections of the Tax Law — the intention of the Legislature. In the fore part of section 353 the Legislature speaks of ascertaining the gain derived or the loss sustained " from the sale or other disposition of property," while in the later clause by its language it provides only in respect to a purchase prior to January 1, 1919, and a sale subsequent thereto. As later further discussed it is on this apparent limitation in this language that the relator bases his contention. So far as we are informed, no court has passed directly upon the question here presented. In the *Klauber Case* (*supra*) Mr. Justice Cochrane, speaking for a unanimous court, construed sections 359 and 353 of the Tax Law. In that case the relator had

sold securities in the year 1919, which he had purchased before January 1, 1919. Between the time of the purchase and January 1, 1919, these securities had fallen in value. When he sold them they were of a value less than he had paid for them, but greater than their market value on January 1, 1919. There was, therefore, a loss on the transaction, but a gain in value of the securities after January 1, 1919, and the Comptroller fixed the tax upon this gain. Mr. Justice COCHRANE said: " The two sections [359, 353], read together to my mind clearly indicate that there must first be a gain as indicated in section 359 as between the purchase price and selling price and then in cases where there is such a gain the portion thereof subject to taxation shall be ascertained by deducting the market value of the property on January 1, 1919, from its selling price. The Legislature did not intend to treat that as a gain which was an actual loss simply because there was an appreciation in value after January 1, 1919, but in cases where there was an actual gain in the selling price over the cost price to include as gross income only that portion of such gain as accrued after January 1, 1919. That was the year when the Income Tax Law became effective and the legislative purpose clearly was not to tax any gains or profits which might have accrued before that year but to include in gross incomes only that portion of the gains or profits which accrued during the taxable period in cases where such gains or profits had actually been derived." This decision gave to this statute the same construction which was, at substantially the same time, declared by the amendment to section 353 above referred to; and we believe that it points out the true construction of the statute that should be given in respect to the question here involved.

When the relator sold securities short, he contracted to sell and deliver that which he did not have. To complete this contract his broker borrowed in his behalf, with agreement to return them, like securities in like amounts from some one owning such; these he delivered in consummation of the sale. When the relator " covered " he bought like securities in like amounts, but only to deliver them to the person from whom the like securities had been borrowed at the time of the short sale. He purchased nothing which he could thereafter sell, but rather only that which he owed to another. He never sold and he never could sell the securities then purchased in his behalf; and they were not the identical securities which he had before sold short. When stocks which have been sold short advance above the price at which they were sold, a loss is " sustained " within the meaning of the statute. It is true the loss is not " taken " until the stocks are purchased, but the expression in the statute " losses sustained during the taxable

year " means, in the case of a short sale, that loss which accrued during the taxable year by reason of the stocks sold short advancing in price between January 1, 1919, and the date the short sale was covered. ( *Klauber Case, supra.*)

Because the language of section 353 does not cover a short sale the relator urges his claim that a loss sustained from a short sale and subsequent covering must be distinguished from the loss sustained from a long purchase and a subsequent sale. We do not think this contention can be upheld. The Legislature by this section, although it did not mention a short sale, did declare its intent and meaning with respect to gains derived and losses sustained during the taxable year 1919 upon transactions initiated before January 1, 1919, and closed after that date. Why should a deductible loss upon a purchase made before January 1, 1919, and a sale thereafter be confined to that part of the loss sustained in 1919, while a loss sustained from the short sale before January 1, 1919, and a covering thereof after January 1, 1919, be not so confined? Why should the Legislature intend that a short seller have such an advantage over a long purchaser? Such a construction limits the gain to that which accrued after January 1, 1919, but allows him a deduction for a loss which accrued before as well as after that date, thus reducing the taxable net income. If in the mind of the Legislature the deductible loss in one case must be confined to that part of the whole loss which was sustained in 1919, it must be held we think that it was intended to be so confined in the other case. Why have one rule covering a transaction of purchase and sale, but a different rule covering a sale and purchase, where both transactions were entered into for an identical purpose, namely, a profit, where both are transactions in respect to the disposition of personal property and the loss is identical in kind, namely, dollars? When the actual contract and transaction in connection with a short sale is considered, this construction is entirely practical and reasonable. A short sale by a broker's client is always a margin contract and transaction with the broker, and is a deal generally in stocks, grain or cotton, rarely if ever in other kinds of property. For illustration, the client on July 1, 1918, orders his broker to sell 100 shares of stock short at par; this transaction involves $10,000; the broker requires his client to deposit a margin of ten points, $1,000, with him for his protection when the short sale is made; on the 1st day of August, 1918, the stock sold has advanced three points; the client's margin is then $700, and his broker calls upon him to keep his margin good at $1,000; on the 1st day of January, 1919, the stock is selling ten points above the price of the short sale; the client has been required to deposit another $1,000, making the

total margin deposited $2,000, but the $1,000 which he first deposited is lost and he has a present credit of but $1,000; he takes an inventory of his assets on the 1st day of January, 1919, and enters for the item with the broker but $1,000 (also the market quotations then showed " the fair market price or value " of the stock he had sold short and so fixed the amount of his loss); on the 1st day of July, 1919, the stock has advanced twenty points from the selling price, and the client orders the broker to cover; the client's loss on July 1, 1919, is $2,000, one-half of which had accrued during the taxable year of 1919.    It is true that on January 1, 1919, the client did not take his loss, but the fact remains that he had deposited $2,000 as margin and had remaining but $1,000 margin; he had suffered an actual loss of $1,000.    He continued his venture hoping that he could in turn make a gain of that $1,000 which he had lost. His account with his broker showed the amount of the loss both on January 1, 1919, the beginning of the taxable year, and on July 1, 1919, when he sold.    Within the meaning of the statute and the holding in the *Klauber* case, the loss of the client in the supposed case sustained during the taxable year was $1,000.    Mr. Justice Cochrane said in the *Klauber* case, speaking of a gain: " The legislative purpose clearly was not to tax any gains or profits which might have accrued before that year but to include in gross incomes only that portion of the gains or profits which accrued during the taxable period in cases where such gains or profits had actually been derived."    This legislative purpose is expressed in sections of the law other than section 353 which limits gains or losses to those which accrued during the taxable year, and the *Klauber* case recognizes that there is a distinction between a gain or loss from an entire transaction begun before and closed after January 1, 1919, and the part which accrued after January 1, 1919.    We should not select from the opinion in the *Klauber* case such an expression as " such gain or profit naturally means the difference between the purchase price and selling price " and forget that we are dealing only with gains or losses which accrued during the taxable year. When Mr. Justice Cochrane wrote that opinion the amendment of section 353 had not been passed and the legislative intent expressed in section 353, when read in connection with section 359, was uncertain.    The two short sale transactions were entered into for profit, and loss was incurred in each transaction, part of which was sustained during the taxable year.    Under the statute and the decision in the *Klauber* case, to justify a deduction, there must be a loss on the transaction; but the deduction allowed cannot be greater than the actual loss incurred on the whole transaction, nor than the loss " sustained during the taxable year; " that is, after

January 1, 1919.   In order to determine the actual loss, the price at which the stocks were sold short must be compared with the price at which they were bought in when he covered.    To ascertain the loss in 1919, the market value of the securities on January 1, 1919, must be compared with the price when the stocks were bought in.

The contention urged by the relator would result in this: If the relator had entered into two transactions prior to January 1, 1919, one of which was a long purchase, the other a short sale, and in the long purchase he had made a profit of $1,000 prior to January 1, 1919, and a further profit of $1,000 between January 1, 1919, and the time he sold in 1919; while in the short sale he had lost on January 1, 1919, $1,000, and had made a further loss after January 1, 1919, of $1,000 at the time he covered, then his gain would be limited to the $1,000 made after January 1, 1919, to be included in income, but his loss would be allowed from the time of the short sale.   On his long purchase he has made a profit of $2,000, but need include in his income but $1,000.   Although on the two transactions he had come out just even, under the construction urged, he would be charged with but $1,000 of profit and would be allowed to deduct $2,000 of loss.   So there would not only be no tax as the result of the two transactions, but he would have benefited to the extent of $1,000 in a loss he could deduct from other income.

The rule would also produce this curious result in an assumed case.   A man makes a short sale of one stock and a long purchase of another stock on July 1, 1918; in each transaction there is a profit of $1,000 on January 1, 1919; and in each a profit of $2,000 on July 1, 1919, when each is closed; from the long purchase he must include $1,000 in his income return and from the short sale $2,000.   He made the same gain in each transaction, but his taxable income is twice as large in one as in the other.

In considering the construction of this statute it must be remembered that this tax was first levied and collected in 1920 with respect to net income during the taxable year 1919.   The tax was not to reach back of 1919, and gains or losses prior to January 1, 1919, should not enter into the calculation.   We hold that, while the language used in section 353 of the Tax Law, in declaring how gains and losses shall be ascertained, mentions only a purchase and subsequent sale, the intent and meaning of the Legislature was to cover all transactions in which profits are had or losses sustained in dealings in property, all " transactions entered into for profit," and that the Legislature did not intend to exclude from its rule all transactions entered into for profit other than a purchase and

subsequent sale. The enactment of the rule was to inform, not exclude.

This construction as here given the statute finds support in decisions of the Supreme Court of the United States (*Goodrich* v. *Edwards*, 255 U. S. 527; *Walsh* v. *Brewster*, Id. 536; *Merchants' L. & T. Co.* v. *Smietanka*, Id. 509), in which the Federal Income Tax Act of 1916, as amended in 1917, known as the Revenue Acts of 1916 and 1917 (39 U. S. Stat. at Large, 756, chap. 463, as amd. by 40 id. 300, chap. 63), containing provisions in all essentials similar to our State Income Tax Law, except that the initial date is March 1, 1913, is construed. In those cases the court recognizes that gains or losses, which accrued before March 1, 1913, were excluded in calculating the net income, and the fair market value on March 1, 1913, of the property dealt in is the basis for determining the gain or loss.

The Comptroller has made the proper allowances, excepting as to the second item the loss cannot be greater than the actual loss and should, therefore, be $13,407.50, rather than as allowed, $15,702.50.

The proceeding is remitted to the Comptroller for modification of his determination accordingly.

All concur, except HINMAN, J., dissenting in part, with an opinion, in which COCHRANE, P. J., concurs.

HINMAN, J. (dissenting in part):

I am convinced that section 353 of the Tax Law has no application to a " short " sale, but I disagree with the conclusion as to the so-called first transaction, that the statute requires the deduction to be measured by the difference between the value of similar stocks on January 1, 1919, and that at which they were later purchased to close the transaction. The full loss should be deducted.

The conclusion as to the non-applicability of section 353 is clearly right when the nature of a " short " sale is understood. By selling " short " a man simply expresses his judgment as to what the price of the stock will be in the future. He sells something he does not own. He sells stocks, borrowed by his broker, which he must replace in the future, and which he hopes to later purchase at a lower price. If his judgment is wrong, he will suffer the penalty of being obliged to go into the market and buy the securities at a higher price.

Section 353 relates only to ascertainment of gain or loss " from the sale or other disposition of property." The words " other disposition " mean some way of relinquishing property or an interest therein other than by sale. In the case of a " short " sale, the loss is not in the sale but in returning the property borrowed — in

buying to restore the thing loaned. The sale in this case was completed in 1918 by the use of borrowed securities. The only transaction left was not a sale but a postponed purchase. The loss was in the buying. That was an acquisition, not a " disposition " of property. He sustained a loss in the transaction during the taxable year of 1919, but not in a " sale or other disposition " of property and thus section 353 does not apply.

As to the third transaction in this case, there was a " long sale." The property was bought in 1918 and sold in 1919, and the basis of the loss was the fair market price on January first under the clear terms of section 353 and because of the rule fixed by that section.

When we come to consider the " short " sale, we have no guide except the language of section 360, allowing as deductions " losses sustained during the taxable year." Mr. Justice VAN KIRK says that means " in the case of a short sale, that loss which accrued during the taxable year by reason of the stocks sold short advancing in price between January 1, 1919, and the date the short sale was ' covered,' " citing the *Klauber* case. His contention seems to be that only part of the loss was sustained in the taxable year. It seems to me that he supplies a rule not found in the statute to take the place of the natural meaning of the language used and that the reasoning of the *Klauber* case is against his interpretation, not in support of it.

In the *Klauber* case, Mr. Justice COCHRANE concluded that " such gain or profit naturally means the difference between the purchase price and selling price." It was only because section 353 was in the statute that any question arose. He did not rely on section 359, the general taxing provision of the act, to fix an arbitrary basis for his determination but he held, in effect, that in the absence of clear warrant of the statute to the contrary, the natural meaning of the taxing provisions of section 359 should prevail over a meaning not clearly required by section 353.

In the case of a " short " sale, the difference between the price for which the sale was made and the price at which the investor " covered " is likewise the natural measure of his loss or gain. Section 353 is inapplicable, just as it was found inapplicable in the *Klauber* case. Falling back upon the general provision of the act whereby " losses sustained during the taxable year " are made deductible, we have no fixed guide as to the extent of the deduction allowable. Can the court fix an arbitrary standard such as was found in section 353 for other transactions or must it give to the language used in section 360 its natural meaning? I believe that the *Klauber* case is authority for the proposition that the natural meaning should be applied rather than to attempt to supply

an omission of the statute by fixing a judicial rule nowhere authorized by the statute. The relator suffered a loss during the taxable year which actually diminished his income that year. It represented a disbursement equal to his real loss and should not be measured by a fiction unless the statute requires it by clear language. In the absence of such a strict requirement of the statute, the actual losses accruing in 1919 on " short " sales should be deducted, whether a paper loss in 1918 can be attributed to that year or not. Certainly there was no actual loss in 1918 as it was impossible to say whether there was any loss or gain on the transaction until it was closed, which determined also the amount of the loss or gain. January first is an arbitrary date fixed by statute for the specific purposes set forth in section 353, which cannot be extended by implication beyond the clear import of the language used. So, too, the words " losses sustained during the taxable year " cannot be given a meaning other than their fair ordinary significance simply because section 353 has interpreted them as assuming a certain arbitrary meaning in relation to a special class of cases not in point here. If the ordinary meaning of the phrase can be colored to mean something else and as so colored be extended to cover a loss on a " short " sale, then it can be applied to a gain on a " short " sale and be made the basis of a tax by words of doubtful import, which cannot be so.

I take it the court would hold in that case, as it did in the *Klauber* case, that in the absence of a rule requiring it, it would refuse to tax the artificial gain attributable to the taxable year and say that the general meaning of a " gain " applied and required the tax to be on the actual gain. I believe that to be the effect of the holding in the *Klauber* case. A loss should be treated in the same way, as I see it. For that reason, I believe the Comptroller was in error in figuring both the first and the second transactions. The actual loss should be allowed in both items.

Cochrane, P. J., concurs.

Determination of the Comptroller annulled, without costs, and the matter remitted for disposition in accordance with the opinion of Van Kirk, J.