Booth, Chief Justice,
delivered the opinion of the court:
The petition in this case alleges an illegal exaction of income taxes. The amount claimed is $5,260.00 and interest. The present plaintiff, the Seaboard Air Line Railway Company, is the successor in ownership and title of the entire assets of the Seaboard Air Line Railway and the Carolina, Atlantic & Western Railway. The proceedings which brought into existence the present plaintiff had their beginning in a written article of agreement dated October 11, 1915, and designated by the parties “Articles and Agreement of Merger and Consolidation between Seaboard Air Line Railway and Carolina, Atlantic & Western Railway forming. Seaboard Air Line Railway Company.” The specific purpose of the contract, without going into details, was the organization of the present plaintiff to take over, own, and operate the two railway companies theretofore operating under separate corporate entities. One of the plaintiff’s predecessor corporations, i. e., the Seaboard Air Line Railway, had on various dates prior to October 11,1915, acquired various parcels of realty for which it had paid $42,654.14. It is conceded that this asset of the company vested in the' plaintiff under the foregoing contract. At various times-during the year 1917 the plaintiff sold and conveyed the realty thus acquired for $141,790.00. The Commissioner of Internal Revenue in assessing plaintiff’s income taxes for the year 1917 arrived at the amount due, $5,260.00, upon this item of income, upon the basis of the plaintiff having acquired the same subsequent to March 1, 1913. If the commissioner is within the statute in this respect, the amount of the tax, computed upon the basis of the difference between the cost of the realty and the sale price, is concededly cor *163 rect. The plaintiff relies upon two distinct contentions for a recovery of the tax paid. First, it is argued that the contract of October 11, 1915, is by its terms and was intended to accomplish no more than a consolidation and merger of two noncompeting railway companies into a single corporation, i. e., the plaintiff, and for tax purposes the transfer to the plaintiff of the realty involved should have been treated by the commissioner as a mere incident to the consolidation of the two corporations; and that, inasmuch as the present plaintiff is for all practical purposes no more than a prolongation of the Seaboard Air Line Railway which had acquired the lands prior to March 1, 1913, the plaintiff is-entitled to be treated as having acquired the same prior to; March 1, 1913.
The court is asked to disregard facts, delve into the equities of the situation, and render a judgment predicated as plaintiff’s counsel suggests upon “substance rather than form.”
The revenue act of 1916 (39 Stat. 765) provides as follows .-
“ Sec. 10. That there shall be levied, assessed, collected, and paid annually upon the total net income received in the-preceding calendar year from all sources by every corporation, * * * organized in the United States, no matter how created or organized * * * a tax of two per centum upon such income, * * *
“ For the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition by a corporation * * * of property, real, personal, or mixed, acquired before March first, nineteen hundred and thirteen, the fair-market price or value of such property as of March first, nineteen hundred and thirteen, shall be the basis for determining the amount of such gain derived or loss sustained.”'
The regulations of the commissioner promulgated under the act are as follows:
“Art. 101. Income from sale of capital assets. — If a corporation sells its capital assets in whole or in part, it will include in its gross income for the year in which the sale-was made an amount equivalent to the excess of the Sales price over the fair market price or value of such assets, as of March 1, 1913, if acquired prior to that date, or over cost if acquired subsequent to that date.”
*164 “Art. 116. Sale of capital assets. — Section 10 of this title provides that for the purpose of ascertaining the gain derived from the sale or other disposition of property, real, personal, or mixed, acquired prior to March 1, 1913, the fair market price or value of such property, as of that date, shall be the basis for determining the amount of such gain derived.
“This provision contemplates that all such gain realized and so ascertained, in cash or its equivalent, upon the sale or disposition of capital assets, shall be returned as gross income. In the case of property acquired subsequent to March 1, 1913, and later sold or disposed o,f, the difference between the cost and the selling price will be returned as income for the year in which the sale is made.”
The plaintiff admits that the commissioner followed the letter of the law, and the facts, it seems to us, precluded any other course. It is difficult to perceive wherein jurisdiction vests in the court to apply a taxing statute to a corporation which ceased to exist nearly two years before the return for income taxes was due, and this is precisely what the court would have to do if it acceded to plaintiff’s contentions. The record does not reflect a reorganization ,or a refinancing of a corporation; on the contrary, two corporations set up their assets and liabilities, and a third was organized, which in turn acquired all the property and assumed all the liabilities of the other two. Article one of the so-called merger agreement reads as follows:
“Article one. * * * Said corporation [plaintiff] shall be and is distinct from each of its constituent corporations parties hereto, and is created by consolidation of said constituent corporations, thereby forming a new consolidated corporation, hereinafter called the ' Consolidated Company.’ ”
Section 10 .of the quoted taxing act imposes an income tax upon a corporation “ no matter how created or organized,” and when the record discloses, as it does in this case, that a gain and profit was realized through the acquisition and subsequent sale of real property by a corporation, the commissioner, it seems to the court, was obligated under the law to charge the profit to the corporate entity which in fact received it. See in this connection United States v. Flannery, 268 U. S. 98; Goodrich v. Edwards, 255 U. S. 527; Walsh v. Brewster, 255 U. S. 536.
*165 The second contention that the plaintiff is entitled to a valuation of the realty involved as of the date of October 11, 1915, is, we think, without merit from the standpoint of fact. While testimony was adduced to prove an increase in value over the price paid for the lands by the plaintiff’s predecessor corporations, there is nothing in the record to sustain a finding that the plaintiff parted with the established valuation as of October-11, 1915, when the lands were acquired by it. The plaintiff carried upon its books all the parcels of land at their original cost price, and while this, of course, is not conclusive as to value, it is most persuasive of the fact that what plaintiff did at the time was to acquire the lands at the stated price. In addition to this, the plaintiff in purchasing the assets of its two predecessor corporations issued its own capital stock dollar for dollar for the outstanding stock of the two predecessor corporations, and it is impossible to segregate from the transaction and find as a fact that the plaintiff paid more than the amount charged upon its books for the land. This amount was the amount carried on the books of the Seaboard Air Line Railway, the original purchaser of the stock, and the agreement indicates clearly that the plaintiff accepted its predecessors’ valuation of assets, and paid accordingly.
The petition will be dismissed. It is so ordered.
Sinnott, Judge; Green, Judge; Moss, Judge; and Graham, Judge, concur.