181 So. 786

## STATE v. FLENNER.

### 6 Div. 316.

Supreme Court of Alabama.

June 2, 1938.

A. A. Carmichael, Atty. Gen., Chas. L. Rowe, Asst. Atty. Gen., and Arthur F. Fite, of Jasper, for the State.

Smith, Windham, Jackson & Rives, of Birmingham, for appellee.

Bradley, Baldwin, All & White, of Birmingham, amici curiae.

KNIGHT, Justice.

The appeal in this case is prosecuted by the State of Alabama from a decree and judgment of the Circuit Court of Jefferson County, in Equity, setting aside and annulling a "deficiency assessment" made by the State Tax ·Commission in the matter of the income return of the appellee for the tax year 1936, and confirming the return as made by the taxpayer.

The cause was tried in the Circuit Court of Jefferson County upon an agreed statement of facts. From this statement it appears that the taxpayer filed his Income Tax Return for the calendar year 1936 with the State Tax Commission of Alabama, showing an income tax due the State in the amount of $8.67.

Thereafter, over the protest, objection and showing of the taxpayer, the State Tax Commission made and entered a final assessment by way of income tax against the taxpayer of $829.87 for the calendar year 1936. From this assessment the taxpayer duly took an appeal to the circuit court, sitting in equity.

It appears that the assessment made by the State Tax Commission was based upon an asserted net taxable gain of $15,775.00, arising out of the sale by the taxpayer of 200 shares of the common stock of the International Harvester Company, purchased prior to the year 1932, for the total price of $19,147.50, and sold by him during the year 1936 for the sum of $20,000.00.

The contention of the State Tax Commission was that the proper legal basis for determining the amount of the taxpayer's income tax on the sale of said stock was the difference between the amount recovered by him on the sale of such stock, and the fair and reasonable market value thereof as of January 1st, 1933,· which was $4,225.00, rather than the actual cost price to the taxpayer of such stock, which was, as above stated $19,147.50. On the present appeal the state makes the same insistence.

So, then, the only question we are called upon·to determine on this appeal is, what is the. correct legal basis, under the provisions of section 345.4(A) (9) of the Income Tax Act, approved July 10, 1935, General Acts, 1935, p. 256, (at page 401) for ascertaining the taxpayer's income tax for the year 1936 from the sale of the said 200 shares of stock?

Article 22, amendment No. 25, of the Constitution of Alabama provides: "The legislature shall have the power to levy and collect taxes for state purposes on net incomes from whatever source derived within this state * * * for the calendar year, 1933, and thereafter and to designate and define the ·incomes to be taxed and to fix the rates of taxes provided the rate shall not exceed 5 per cent nor 3 per cent on corporations. * * *"

Section 345.1 of the Act of 1935, page 397, provides: "In addition to all other taxes now imposed by law there is hereby levied and imposed a tax on the entire net income as defined in this Article," etc.

Section 345.3 of the same Act, page 399, provides: "The tax herein levied and im-

230

posed upon every resident of this State, which tax is in addition to all other taxes imposed by this Act, and which tax shall be assessed, collected and paid annually, upon and with respect to his entire net taxable income as herein defined and shall be computed at the rates as follows * * *."

Subsection (A) (9) of Section 345.4, same Act, page 401, provides: "The basis for determining gain or loss on a sale or disposition of property acquired prior to January 1, 1933, shall be the fair and reasonable market value as of January 1, 1933."

Section 345.10, same Act, page 406, provides: "The term 'gross income'. as used herein: (1) Includes gains, profits and income derived from * * * commerce or sales, or dealings in property whether real or personal, growing out of ownership or use of or interest in such property; also from interest, royalties, rents, dividends, securities or transactions of any business carried on for gain or profit and the income derived from any source whatever, including any income not exempted under this Article and against which income there is no provision for a tax."

It is to be noted that the provisions of the Alabama Income Tax Statute are substantially similar to the Federal Income Tax Statutes, and of the States of New York, Massachusetts, Wisconsin and Georgia. These statutes were in force when the Alabama Income Amendment was adopted. The fact is the Alabama Act, Section 345.4(A) (9), which is involved in this case, was evidently borrowed from the Federal Act. However, it is insisted by appellant that Article 22 of the Constitution (the Income Tax Amendment) has conferred power upon the Legislature to define what is net income upon which the tax is levied, and that the Legislature has exercised this power in providing a basis for determining gains or losses on the sale of property acquired prior to January 1, 1933. After all, however, the question is what did the Legislature mean by enacting Subsection (A) (9) of Section 345.4, when construed in connection with the entire Act?

■ While the construction placed upon a similar provision of the Federal Income Statute, or by the Courts of New York, Massachusetts, Wisconsin and Georgia, upon similar provisions in their respective statutes, are not binding upon this Court, yet the decisions of those courts are justly entitled to weight. Particularly is this true with reference to the decisions of the Supreme Court of the United States, when it is remembered that the Alabama Act was borrowed from the Federal statute, and after the Supreme Court of the United States had passed upon, and construed the same.

■ The Legislature of Alabama has deliberately and substantially used in the Acts now before us practically the same language employed in the pertinent provisions by the Congress in adopting the Federal Income Tax law. It was no accidental happening. While this Court will not abdicate its jurisdiction in construing and determining the meaning of an act of its own state legislature, yet this Court recognizes the legislative presumption that obtains here, as well as elsewhere, that, in borrowing an Act of the Legislature of another state, which had received a settled construction in that state before enacted here, it was the purpose of the Legislature in so adopting the statute that the construction placed on the same by the highest court of the state of original enactment should be given the statute, unless there appears something in the act as enacted here to show a contrary purpose. We know this rule is not absolute, or controlling, but it is at least persuasive. Alabama Fuel & Iron Co. v. Denson, 208 Ala. 337, 94 So. 311.

We will now refer to the decisions of the Supreme Court of the United States, and other states having similar provisions in the Income Tax Acts, as subsection (A) (9) of Section 345.4 of the Alabama Act of 1935.

The case of Goodrich v. Edwards, United States Collector of Internal Revenue for the Second District of the State of New York, 255 U.S. 527, 41 S.Ct. 390, 65 L.Ed. 758, decided March 28, 1921, presents the following facts: "(2) The plaintiff in error being the owner of shares of the capital stock of another corporation, in 1912 exchanged them for stock, in a reorganized company, of the then value of $291,600. It was averred and admitted that on March 1, 1913, the value of this stock was $148,635.50, and that it was sold in 1916 for $269,346.25. Although it was thus apparent that the stock involved was of less value on March 1, 1913, than when it was acquired, and that it was ultimately sold at a loss to the owner, nevertheless

the collector assessed the tax on the difference between the value on March 1, 1913, and the amount for which it was sold."

The taxpayer, having paid the assessment under protest, sued the collector to recover the amount of the illegal assessment, taking the position that as the property was sold at a real loss to him, he was not chargeable as for any gain, notwithstanding that the property was sold for an amount in excess of its value as of March 1st, 1913, the claimed date for computing the value.

The Supreme Court answered this contention in the following language (41 S.Ct. page 391):

"The act under which the assessment was made provides that the net income of a taxable person shall include gains, profits, and income derived from * * * sales or dealings in property, whether real or personal, * * * or gains or profits and income derived from any source whatever. 39 Stat. 757; 40 Stat. 300, 307.

"Section 2(c) of this same act provides that—'For the purpose of ascertaining the gain derived from a sale or other disposition of property, real, personal, or mixed, acquired before March first, nineteen hundred and thirteen, the fair market price or value of such property as of March first, nineteen hundred and thirteen, shall be the basis for determining the amount of such gain derived.'

"And the definition of 'income' approved by this court is: ' "The gain derived from capital, from labor, or from both combined," provided it be understood to include profit gained through a sale or conversion of capital assets.' Eisner v. Macomber, 252 U.S. 189, 207, 40 S.Ct. 189 (64 L.Ed. 521, 9 A.L.R. 1570).

"It is thus very plain that the statute imposes the income tax on the proceeds of the sale of personal property to the extent only that gains are derived therefrom by the vendor, and we therefore agree with the Solicitor General that since no gain was realized on this investment by the plaintiff in error no tax should have been assessed against him.

"Section 2(c) is applicable only where a gain over the original capital investment has been realized after March 1, 1913, from a sale or other disposition of property."

In the case of Walsh, Collector of Internal Revenue, v. Brewster, 255 U.S. 536, 41 S.Ct. 392, 65 L.Ed. 762, it appeared that the taxpayer purchased in 1902 and 1903 bonds of the International Marine Company for $231,300.00, and sold the same in 1916 for $276,150.00. It was stipulated that the market value of these bonds on March 1, 1913, was $164,480.00. The Supreme Court of the United States, on the above stated facts, held that the taxpayer was only taxable on the difference between the purchase price in 1902 and 1903, viz. $231,300.00, and the price for which the bonds were sold in 1916, or on the sum of $44,850.00.

The Supreme Court of New York, Appellate Division, Third Department, in the case of People ex rel. Klauber v. Wendell, State Comptroller, 196 App.Div. 827, 188 N.Y.S. 301, had before it for construction the New York Income Tax Act, which contained the following provision; Section 353. "For the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal or mixed, the basis shall be first, in case of property acquired before January first, nineteen hundred and nineteen, the fair market price or value of such property, as of January first, nineteen hundred and nineteen, and, second, in case of property acquired on or after that date, the cost thereof; or the inventory value, if the inventory is made in accordance with this article." Laws N.Y.1919, c. 627.

In sustaining the contention of the taxpayer, the Supreme Court of New York held, first, there must be an actual sale or dealing in respect to the property; and, second, there must be a gain or profit derived from such sale or dealing. And such gain or profit means the difference between the purchase price and selling price. That the purpose of the law was not to make an appreciation in the value of the property subsequent to the amendment the subject of taxation, irrespective of whether or not the entire transaction involved a gain or loss. The court then observed (188 N.Y.S. page 302): "Section 353 speaks of 'the gain derived' from the sale of property, and that clearly means such 'gain' as is described and referred to in section 359. And section 353 then provides that, for the purpose of ascertaining such gain, the basis shall be, in case of property acquired before 1919, the market value thereof on January 1st of that year. The two sections, read together, to my mind clearly indicate that there must first be a gain, as indicated in

232

section 359, as between the purchase price and selling price, and then, in cases where there is such a gain, the portion thereof subject to taxation shall be ascertained by deducting the market value of the property on January 1, 1919, from its selling price. The Legislature did not intend to treat that as a gain which was an actual loss, simply because there was an appreciation in value after January 1, 1919, but in cases where there was an actual gain in the selling price over the cost price to include as gross income only that portion of such gain as accrued after January 1, 1919. That was the year when the Income Tax Law became effective, and the legislative purpose clearly was not to tax any gains or profits which might have accrued before that year, but to include in gross incomes only that portion of the gains or profits which accrued during the taxable period in cases where such gains or profits had actually been derived."

The facts in the last cited case showed that the taxpayer, in the year 1919, when the Income Tax Law went into effect, sold securities for less than the price at which he had purchased them prior to that year, but in excess of their market value on January 1, of the year. The comptroller included in the gross income of the taxpayer the difference between the market value on January 1, 1919, and their selling price. While the securities had increased in value after January 1, 1919, nevertheless, this increase did not exceed the purchase price of the property. The court set aside and annulled this assessment, and held that there was no gain to tax.

The State of Massachusetts in 1916 adopted a constitutional amendment authorizing a tax on incomes. Pursuant to this authority, the general court levied such a tax. Section 7 of the Act levying the tax provides: " * * * In determining gains or losses realized from the sale of capital assets, the basis of determination, in case of property owned on January first, nineteen hundred and sixteen, shall be the value on that date, and in case of property acquired thereafter, the value on the date when it is acquired." G.L.Mass. c. 62.

A case soon arose in that jurisdiction for the construction of the Act, and particularly section seven thereof. The facts in the case then brought before the Supreme Judicial Court of Massachusetts

[Brown v. Long, Com'r of Corporations and Taxation, 242 Mass. 242, 136 N.E. 188] were: The taxpayer purchased shares of stock at various times between 1868 and 1904 at prices aggregating $4,-600.00. The value of these shares on the date of January, 1916, was $1,470.00. They were sold in 1920 for $4,996.32. The question presented to the court was whether the taxpayer was lawfully taxable for income on the difference between the cost and sale price, or on the difference between the value on the 1st of January, 1916, and the sale price.

The Supreme Judicial Court of Massachusetts answered the question as follows (136 N.E. page 189): " 'Income,' in the amendment and statute, expresses a comprehensive idea. It is to be given a broad meaning. It must be rationally construed and not stretched to include purely theoretical as distinguished from practical conceptions. Income as a subject of taxation imports an actual gain. It must mean an increase of wealth out of which money may be taken to satisfy the pecuniary imposition laid for the support of government. Tax Commissioner v. Putnam, 227 Mass. 522, 116 N.E. 904, L.R.A.1917F, 806.

"Plainly gain derived from the sale of stock comes within the meaning of the word 'income.' Osgood v. Tax Commissioner, 235 Mass. 88, 126 N.E. 371; Merchants' Loan & Trust Co. v. Smietanka, 255 U.S. 509, 41 S.Ct. 386, 65 L.Ed. 751, 15 A.L.R. 1305.

"It is manifest that the actual increase in wealth which came to the complainant out of this transaction in stock did not exceed the difference between the cost to him when he bought and the price received when he sold. The circumstance that on January 1, 1916, the market value of the stock was much less than he paid is an immaterial factor in ascertaining his actual material profit. His investment had been made long before that date at a higher price. He made no purchase on that date.

"The excess of gains over losses made subject to taxation by section 5 cannot be more than the actual gain above the original investment, whether that was made before or after January 1, 1916. The terms of section 7 afford the means of calculating the gain on a sale for a price in excess of the value on January 1, 1916, when that value is in excess of the value of the original investment made before that date.

The tax law in this respect avoids difficulties pointed out in Tax Commissioner v. Putnam, 227 Mass. [522], at page 529, 116 N.E. 904, L.R.A.1917F, 806."

The Supreme Court of Wisconsin in considering a similar question, under a similar Income Tax Law, held in the case of Falk et al. v. Rosa et al., 201 Wis. 292, 230 N.W. 64, 65: "Income or gain arises only when the property is sold at a profit. As long as it is held by the owner, it simply represents the owner's capital invested in it, whatever its fluctuating value may be. An income within the meaning of the constitutional amendment can arise in no other way than by a sale of the property at an advance over the amount paid therefor. In order that a sale after January 1, 1911, of property purchased before that date give rise to an income, it must first appear that the property sold for more than it cost. Unless that appears no income results from the sale. Where that does appear, then, and not until then, does the question arise as to what proportion of the income is subject to an income tax. When it does arise, the present statute affords a correct rule for determining that portion thereof which is subject to an income tax. That amount will be represented by the difference between the value of the property January 1, 1911, and the sale price. The amount of the appreciation in the value of the property after that time is subject to an income tax. The value of the property on January 1, 1911, is not material at all upon the question of whether an income was realized from a sale of the property. It becomes material only when a gain or income is revealed by a comparison of the purchase price with the sale price. In such cases the statutory provision we are considering operates as a limitation upon either the gain or loss material to the purposes of the income tax. This has been the universal construction of provisions similar to the one we are discussing, so far as we have been able to ascertain. Walsh v. Brewster, 255 U.S. 536, 41 S.Ct. 392, 65 L.Ed. 762; Goodrich v. Edwards, 255 U.S. 527, 41 S.Ct. 390, 65 L.Ed. 758; McCaughn v. Ludington, 268 U.S. 106, 45 S.Ct. 423, 69 L.Ed. 868; United States v. Flannery, 268 U.S. 98, 45 S.Ct. 420, 69 L.Ed. 865; Walter v. Duffy (C.C.A.) 287 F. 41; Phillips v. United States (D.C.) 12 F.2d 598; People ex rel. Klauber v. Wendell, 196 App.Div. 827, 188 N.Y.S. 301; affirmed by the court of appeals without opinion in 232 N.Y. 549, 134 N.E. 567; People ex rel. Keim v. Wendell, 200 App.Div. 388, 193 N.Y.S. 143; Brown v. Commissioner, 242 Mass. 242, 136 N.E. 188."

The Court of Appeals of Georgia, in the case of Brandon v. State Revenue Commission, 54 Ga.App. 62, 186 S.E. 872, in construing a similar provision of the Georgia Income Tax Law, followed the decision of the Supreme Court of the United States in the Goodrich Case, supra, and held that (page 874) "Whatever may be the strict or technical meaning of income, for tax purposes the term means an actual gain or an actual increase in wealth, and does not include a mere unrealized increase in value. Accordingly, as a subject of taxation, income is the gain derived from capital or labor, or both combined; and income for any given period of time is the amount of gain so derived during the designated period. 'Things which are not income cannot be made such by mere legislative fiat.'" State ex rel. Bundy v. Nygaard, 163 Wis. 307, 158 N.W. 87, L.R.A. 1917E, 563; Falk v. Wisconsin Tax Commission, 201 Wis. 292, 230 N.W. 64.

■ In line with current judicial decisions in such cases, we hold that in order that a sale after January 1, 1933, of property purchased before that date can give rise to an income, it must appear that the property sold for more than it cost. Unless that appears no income results from the sale.

■ It was the evident purpose of the Legislature to exclude all gains which accrued prior to January 1st, 1933, and which were realized by the sales or transactions thereafter made, making only such portion of the gains so accrued after January 1st, 1933, subject to tax, keeping in mind however that there could never be a gain until the property sold for more than the purchase price, and the gain would be confined to the excess of the selling price over the cost price. It was not the purpose of the Legislature to make an appreciation in the value of property subsequent to January 1, 1933, subject to an income tax, irrespective of whether or not the entire transaction involved a gain or loss.

■ The value of the property on January 1, 1933, is not material at all upon the question of whether an income was realized from the sale of the property. It becomes material only when a gain or income is revealed by a comparison of the

purchase price with the sale price. In such cases the statutory provision—Subsection (A) (9), Section 345.4—operates as a limitation upon either gain or loss material to the purposes of the income tax. This is the settled construction placed upon similar provisions of Income Tax Laws. Authorities supra.

To illustrate, if A purchased 1000 shares of stock in a mercantile business in 1930 for $10,000.00, and on the first of January, 1933, this stock had increased in value to the point where it was of the value of $12,500.00, and on December 1st, 1933, A sold this stock for $15,000.00, the difference in value of this stock on January 1, 1933, and the amount that the same was sold for on December 1st, 1933, would be the amount subject to tax.

Or, suppose A purchased 1,000 shares of stock in the same corporation in 1930 for $10,000.00, and on January 1, 1933, this stock had decreased in value to $5,-000.00, but at a later date A sold the stock for $9,000.00, still "A" would not be chargeable with any income or gain on the stock, albeit, the stock had recovered some $4,000.00 of its value between January 1st, 1933, and the date of the sale. In that event "A" would still be a loser.

With respect to deductions as for loss: Suppose "A" purchased the same stock for $10,000.00, prior to January 1st, 1933, and on that date, January 1st, 1933, this stock had decreased in value to the point where its fair and reasonable market value was only $5,000.00, and sometime after January 1st, 1933, "A" sold the stock for $1,000.00, "A's" deductible loss would not be $9,000.00, but the difference between the $5,000.00, representing the fair and reasonable market value of the stock on January 1st, 1933, and the sale price. This difference would be $4,000.00, and that sum would reflect "A's" deductible loss under the Act.

Or, suppose "A" purchased the stock in 1930 and paid $10,000.00 for it, and that on January 1st, 1933, the fair and reasonable market value of the stock was only $5,000.00, and thereafter on December 1st, 1937, "A" sold the stock for $10,000.00, the actual price paid. There would, in such case, be neither a taxable gain nor a deductible loss.

This holding in nowise conflicts with what is held in the case of State v. Weil, 232 Ala. 578, 168 So. 679.

Applying the foregoing principles to the case now before us, it is obvious that the circuit court committed no error in annulling the deficiency assessment made by the State Tax Commission, and in confirming this taxpayer's return.

It follows, therefore, that the judgment of the circuit court is due to be affirmed. It is so ordered.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.