In the Matter of the Application of WENDELL T. BUSH for a Certiorari Order to WALTER W. LAW, JR., and Others, Constituting the State Tax Commission.

*Taxation — income tax — real estate was purchased by petitioner prior to 1919 — property was requisitioned by Federal government in 1918 but appraisal was not made until February, 1919 — appraisal was less than actual value on January 1, 1919, but more than actual investment plus cost of permanent improvements — difference between actual value and price paid by Federal government not deductible.*

Certiorari order granted out of the Supreme Court at an adjourned Albany Special Term on the 14th day of March, 1922, and entered in the Albany county clerk's office, directed to the respondents.

Determination confirmed, with fifty dollars costs and disbursements, upon the authority of *People ex rel. Klauber* v. *Wendell* (196 App. Div. 827; affd., 232

---

* See Civ. Prac. Act, § 1283, as amd. by Laws of 1922, chap. 355.— [REP.

† See Laws of 1918, chaps. 276, 417, amdg. Tax Law, art. 9-A, as added by Laws of 1917, chap. 726.— [REP.

N. Y. 549) and *People ex rel. Keim* v. *Wendell* (200 App. Div. 388). H. T. Kellogg, Acting P. J., Van Kirk and Hinman, JJ., concur; Hasbrouck, J., dissents, with an opinion.

HASBROUCK, J. (dissenting): The petitioner had assessed against him by the State Tax Commission an income tax for 1919, and in this proceeding seeks its review in order to establish a loss on the sale of certain real estate and have such loss offset against his income. He had acquired long prior to the year 1919 a certain tract of land situate in the city of Brooklyn, State of New York. In April, 1917, the United States declared war against Germany. Among other war acts passed was section 10 of an act of Congress which became a law August 10, 1917, which provided as follows: " Sec. 10. That the President is author- ized, from time to time, to requisition foods, feeds, fuels, and other supplies neces- sary to the support of the Army or the maintenance of the Navy, or any other public use connected with the common defense, and to requisition, or otherwise provide, storage facilities for such supplies; and he shall ascertain and pay a just compensa- tion therefor. If the compensation so determined be not satisfactory to the person entitled to receive the same, such person shall be paid seventy-five per centum of the amount so determined by the President, and shall be entitled to sue the United States to recover such further sum as, added to said seventy-five per centum will make up such amount as will be just compensation for such necessaries or storage space." * In pursuance of the above act of Congress, the President requisitioned the said real estate on the 6th day of April, 1918. The valuation of the premises taken was fixed under the terms of section 10 by a commission of appraisal appointed by the President on February 4, 1919. As a condition of the payment of the appraisal the government required the owner to execute a deed of the premises on February 10, 1919. In 1919 the Legislature of the State of New York enacted an Income Tax Law.† Among other provisions of such law were sections 353 and 360. " § 353. Ascertainment of gain and loss. For the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal or mixed, the basis shall be, *first*, in case of property acquired before January first, nineteen hundred and nineteen, the fair market price or value of such property, as of January first, nineteen hundred and nineteen, and, *second*, in case of property acquired on or after that date, the cost thereof; or the inventory value, if the inventory is made in accordance with this article." " § 360. Deductions. In computing net income there shall be allowed as deductions: * * * 5. Losses sustained during the taxable year * * * if incurred in any transaction entered into for profit." The petitioner states: " My original investment in this property from the time I acquired it to the time of its appropriation by the United States, for the purchase price and the cost of permanent improvements, was less than the amount which I received from the United States in payment for the property." In substance and in effect the State Tax Commission in its return by not denying the allegations of the petition and in returning a stipulation of facts made by the petitioner admits that

---

\* See Federal Food Control Act of 1917 (40 U. S. Stat. at Large, 279), § 10, which is also known as the Lever Act.— [REP.

† See Laws of 1919, chap. 627, adding to Tax Law, art. 16.— [REP.

the actual and fair market value of the lands appropriated on January 1, 1919, was $357,656.25, and the amount which the government awarded therefor on February 4, 1919, was $205,209.57.   The question upon which the solution of the appeal in the case at bar must turn is on the character of the loss the petitioner suffered.   If the loss based upon the fair market value as of January 1, 1919, was a fictitious loss one determination should follow; if an actual loss, another.   The leading case in this State on the subject of gain (*People ex rel. Klauber* v. *Wendell*, 196 App. Div. 827) as taxable income justly holds that the taxpayer should not be assessed on a gain computed only on a difference in value as of January 1, 1919, and the date of sale in that year of property acquired prior thereto, but that whether there was gain or not should be determined from the entire transaction including the cost and sale.   If the sale results in no gain over the cost of the property no taxable gain is established.   To warrant the taxation of gain it is held that such gain must be an actual gain and not a fiction resulting from a comparison of values between January 1, 1919, and the day of sale.   Mr. Justice Cochrane supported the conclusion he reached by a citation of Federal authorities on the construction of the Federal income statute to which our State statute is substantially similar. (*Goodrich* v. *Edwards*, 255 U. S. 527; *Walsh* v. *Brewster*, Id. 536.)   The *Klauber* case deals with a gain.   The case under consideration deals with a loss.   The construction required where there is any doubt is one favoring the taxpayer. Where there is no actual gain the taxpayer should not be assessed because a gain is shown in the market value of the property sold between January 1, 1919, and the day of sale in that year.   There is nothing actual to the taxpayer in that gain. On the contrary, in the case at bar owing to the peculiar nature of real estate, its substantial and durable nature, the fixability of its location and the increment which comes to it from population in proximity to it, makes such real estate the most real thing among property possessions.   Acquired before 1919, it had grown to a market value on January first of over $150,000 more than its cost to the owner. The statute says, if the owner sells it at less than such value that loss is a deductible loss.   The requisition by the government is the equivalent of a contract of sale. No construction of a statute should be indulged which robs the taxpayer of a right which the statute expressly confers.   Prior to the enactment of chapter 573 of the Laws of 1921* the statute says of property acquired before that date a loss arising from a sale in 1919 shall be measured by its fair market value on January first of that year.   The amendment changed the law so as to provide: " No loss shall be deemed to have been sustained if either *the cost* or the fair market price or value on January first, nineteen hundred and nineteen, is less than the value realized."   In the case at bar the cost of the property acquired long before January 1, 1919, was about equal to the value realized, but the market value January 1, 1919, was in the excess heretofore stated.   The purpose of the amendment of 1921 was to take away from the taxpayer the right to have his loss computed with reference to market value January 1, 1919.   The inference to be drawn from the enactment of the law is that it was passed to create a new rule, a rule which did not obtain for 1919.   The courts have no power to write into the statute words which are not there and *cost* so far as losses are concerned was not there January 1, 1919.   We must abide by what

---

* Amdg. Tax Law, § 353, as added by Laws of 1919, chap. 627.— [REP.

the statute says.  (*Matter of Buechner*, 226 N. Y. 442.)  The *Klauber* case in its main purport supports the argument here for it required the gain upon which the tax should be assessed where there was acquisition before January 1, 1919, and sale afterward to be an actual gain.  If the loss here be an actual loss based upon an actual value of January 1, 1919, the claim of support in the *Klauber* case must be well made.  We think, too, *People ex rel. Keim* v. *Wendell* (200 App. Div. 388) supports the conclusion here reached that the taxpayer is entitled to the actual loss sustained during the taxable year.  If the property was actually worth $357,000, January 1, 1919, the loss was actually enough where the government only appraised it at $200,000.  Since the loss sustained was sustained as the result of a proceeding to appraise the value of the land and is in the nature of a contract of sale, the sale did not take place until the contract was made.  In any event, it would be illogical to say that a loss occurred at the time of the requisition. It did not fix the value.  The loss hung upon such determination and consequently occurred in 1919.  We think the amount of the loss was established by the acceptance of the award, by the receipt of the contract price.  The petitioner was under no obligation to enter into a litigation to get more money.  That was a privilege conferred upon him which it was for him alone to say whether he would use or not. In other words, by failing to exercise his privilege he may not be held to have given the government the amount of his loss.  The determination of the State Tax Commission should be annulled, with costs, and the matter remitted to it to proceed in accordance herewith.