## APPEAL OF NEW ORLEANS, TEXAS & MEXICO RAILWAY CO.

Docket No. 400.   Promulgated March 9, 1927.

1. The petitioner in the year 1918 purchased its own bonds for less than the amount for which they had been issued. *Held*, that it realized no taxable gain from the transaction.

2. That part of the 1918 income tax (2 per cent) paid for the petitioner by the Director General of Railroads in accordance with the provisions of the Federal Control Act of March 21, 1918, was not income to the petitioner.

3. The reasonable compensation of a railroad company for the use of its properties during the period of Federal control, awarded to a taxpayer keeping its accounts on the accrual basis, was income for each of the accounting periods for which the compensation was allowed, although not received until a later date.

4. The amount paid by the petitioner on April 1, 1919, as interest on its non-cumulative debenture bonds for the period July 1 to December 31, 1918, *held* to be a proper deduction in computing its net income for the year 1918.

*J. L. Lockett, Esq.*, for the petitioner.
*P. S. Crewe, Esq.*, for the Commissioner.
*Schofield Andrews, Esq.*, and *James Craig Peacock, Esq.*, as *amici curiae*.

This appeal is from the determination by the Commissioner of a deficiency in income and profits taxes for the year 1918 in an amount of more than $10,000.

### FINDINGS OF FACT.

The taxpayer is a Louisiana corporation with its principal office at Houston, Tex., and is engaged in operating railroad properties as a part of the Gulf Coast System. Its books were kept on the accrual basis.

The taxpayer was organized on March 1, 1916, and on that date it purchased from the receiver of the Texas, New Orleans & Mexico Railroad Co. all of the property of that company, and issued as part of the purchase price $15,158,000 five per cent non-cumulative debenture bonds. During the year 1918, the taxpayer purchased on the open market, and thereby retired, $1,308,750 par value of these bonds, paying therefor the amount of $655,424.52, which was $653,-325.48 less than the par value of the bonds so purchased. The Commissioner determined that the taxpayer, as a result of the purchase of said bonds, realized income in the amount of $653,325.48, and upon audit of the taxpayer's return for the year 1918, he increased the income reported on the return by the said amount of $653,325.48.

In the year 1915, the New Iberia & Northern Railroad Co. acknowledged an indebtedness to the New Iberia Syndicate of $1,891,086.47.

In the same year the New Iberia & Northern Railroad Co. issued to the New Iberia Syndicate, in satisfaction of said indebtedness, $988,600 par value of its capital stock and $2,000,000 par value of its 5 per cent first mortgage bonds. The bonds at that time had a life of 28 1/45 years. In the year 1916, the taxpayer purchased all of said stock and bonds from the syndicate and held them during the year 1918. The taxpayer and the New Iberia & Northern Railroad Co. were affiliated during that year. The difference between the par value of the stock and bonds so issued and the amount of the acknowledged indebtedness is $1,097,513.53, which the New Iberia & Northern Railroad Co. seeks to amortize over the 28 1/45-year life of the bonds; and in the consolidated return of the taxpayer and the New Iberia & Northern Railroad Co. for the year 1918, there was deducted from gross income on account of such amortization the amount of $39,174.48. The Commissioner, upon audit of the taxpayer's return, determined that the taxpayer is entitled to amortize over the life of the bonds only $108,913.53, and he therefore disallowed $35,174.48 of the amount so deducted.

The Commissioner, upon audit of the taxpayer's income and profits-tax return for the year 1918, added to the income reported thereon the amount of $14,550.37, which represented that part of the 1918 income tax (2 per cent) paid for the taxpayer by the Director General of Railroads in accordance with the provisions of the Federal Control Act of March 21, 1918.

On December 28, 1917, the President of the United States, by proclamation dated December 26, 1917, took possession and assumed control of the taxpayer's railroad property, and retained such possession and control during the year 1918. The taxpayer did not, after the enactment of the Federal Control Act of March 21, 1918, execute the just compensation agreement, commonly known as the standard return, authorized by that Act, but filed an application with the Director General of Railroads for compensation in excess of the standard return. Negotiations were continued until July 29, 1921, when a final settlement was signed by the taxpayer and the Director General of Railroads, in which $1,500,000 was agreed upon as the annual compensation to be paid by the United States to the taxpayer and its subsidiary lines for the use of their property.

At the time of filing its original consolidated return for the year 1918, the taxpayer included in its gross income the amount of $1,101,-215.32, being the so-called standard return of the taxpayer and its subsidiary lines as originally certified to by the Interstate Commerce Commission. Subsequent to the execution of the final settlement agreement of July 29, 1921, the taxpayer filed an amended return for

the year 1918, and included in its gross income said amount of $1,500,000 in place of the $1,101,215.32 reported on its original return. The Commissioner excluded the difference between those two amounts from the taxpayer's income for the year 1918, attributing it to the year 1921.

The taxpayer, as hereinabove stated, issued on March 1, 1915, $15,158,000 five per cent non-cumulative debenture bonds. Approximately $13,700,000 of said bonds were outstanding during the period July 1, 1918, to December 31, 1918. The debenture under which the bonds were issued contained the following provisions:

As to any instalment of interest on the income bonds payable on April 1, 1918, or on any semi-annual interest date thereafter, *the board of directors shall in each case ascertain and determine in the manner provided in this indenture the net income of the Railway Company from all sources* during the six months period beginning the 1st day of July, immediately preceding any such 1st day of April and during the six months period beginning the 1st day of January immediately preceding any such 1st day of October, *and if there be such net income applicable to the payment of such interest and to the extent that there shall be such net income,* after making the deductions and reservations for additions, betterments and improvements as hereinafter provided, *the board of directors shall declare the same to be, and the same shall thereupon become, due and payable by the Railway Company, provided* that *no such declaration shall be made* and the Railway Company shall be under no obligation to make any payment of such interest, for any one fiscal year, *unless the net income* of the Railway Company in such year applicable to such payment to be ascertained and determined as hereinafter provided, and after reservation for additions, betterments and improvements, as hereinafter provided, *shall suffice to pay at least 1% on said income bonds for such fiscal year.* For the purposes of this indenture the fiscal year of the Railway Company shall be deemed to be from July 1st to and including June 30th. (Italics ours.)

During the six months beginning July 1, 1918, and ending December 31, 1918, the taxpayer's net income applicable under the terms of the indenture to the payment of interest on said bonds for said period, after making the deductions and reservations for additions, betterments and improvements as in said indenture provided, was sufficient to pay interest for said period on said bonds at the rate of 5 per cent per annum, and the board of directors of the taxpayer did in accordance with said indenture, on the eleventh day of March, 1919, so declare. The interest so declared amounted to $341,153.14 and became due and payable April 1, 1919. The taxpayer, in its income and profits-tax return for the year 1919, deducted the amount of interest in computing its net income for that year. The Commissioner disallowed the deduction on the ground that said interest was a proper deduction for the year 1918 and not for the year 1919. The taxpayer now claims a right to deduct said interest in computing its net income for the year 1918.

OPINION.

MARQUETTE: The first question presented herein is whether or not the taxpayer realized any income as the result of the purchase by it in the year 1918 of its own bonds for less than their par value. A similar question was presented to the Supreme Court of the United States in the case of *Bowers* v. *Kerbaugh-Empire Co.*, 271 U. S. 170. The facts in that case were that the Kerbaugh Empire Co. prior to July 2, 1913, borrowed from the Deutsche Bank of Germany the amount of $1,983,000. The loan was evidenced by notes payable, as to principal and interest, in marks or their equivalent in United States gold coin at prime bankers' rates in New York for cable transfer to Berlin. The equivalent of the loan in marks was 8,341,-337.50. On September 1, 1913, there remained unpaid 6,740,800 marks. The notes of the company then outstanding were surrendered and a new note was given for 6,740,800 marks. When that note became due it was renewed. Partial payments were made and by March 31, 1915, the principal was reduced to 3,216,445 marks.

After the United States entered the war, the Deutsche Bank became an alien enemy. In 1921, on the demand of the Alien Property Custodian, the Kerbaugh-Empire Co. paid $113,688.23 in full settlement of the principal and interest owing on the notes belonging to the Deutsche Bank. Of that amount, $80,411.12 represented principal. The settlement was on the basis of 2½ cents per mark. Measured by United States gold coin, the difference between the value of the marks at the time the loan was made and the amount paid to the Custodian was $684,456.18. The Commissioner held that the last named amount was income to the Kerbaugh-Empire Co. The Supreme Court of the United States, in holding that the company did not realize any income from the transaction, said:

The question for decision is whether the difference between the value of marks measured by dollars at the time of payment to the Custodian and the value when the loans were made was income.

The Sixteenth Amendment declares that Congress shall have power to levy and collect taxes on income, "from whatever source derived" without apportionment among the several States, and without regard to any census or enumeration. It was not the purpose or effect of that Amendment to bring any new subject within the taxing power. Congress already had power to tax all incomes. But taxes on incomes from some sources had been held to be "direct taxes" within the meaning of the constitutional requirement as to apportionment. Art. I, § 2, cl. 3, § 9, cl. 4; *Pollock* v. *Farmers' Loan and Trust Co.*, 158 U. S. 601. The Amendment relieved from that requirement and obliterated the distinction in that respect between taxes on income that are direct taxes and those that are not, and so put on the same basis all incomes "from whatever source derived." *Brushaber* v. *Union Pac. R. R.*, 240 U. S. 1, 17. "Income" has been taken to mean the same thing as used in the Corporation Excise Tax Act of 1909, in the Sixteenth Amendment and in the various revenue acts subsequently passed. *Southern Pacific Co.* v. *Lowe*, 247

U. S. 330, 335; *Merchants L. & T. Co.* v. *Smietanka*, 255 U. S. 509, 519. After full consideration, this Court declared that income may be defined as gain derived from capital, from labor, or from both combined, including profit gained through sale or conversion of capital. *Stratton's Independence* v. *Howbert*, 231 U. S. 399, 415; *Doyle* v. *Mitchell Brothers Co.*, 247 U. S. 179, 185; *Eisner* v. *Macomber*, 252 U. S. 189, 207. And that definition has been adhered to and applied repeatedly. See e. g. *Merchants L. & T. Co.* v. *Smietanka, supra*, 518; *Goodrich* v. *Edwards*, 255 U. S. 527, 535; *United States* v. *Phellis*, 257 U. S. 156, 169; *Miles* v. *Safe Deposit Co.*, 259 U. S. 247, 252–253; *United States* v. *Supplee-Biddle Co.*, 265 U. S. 189, 194; *Irwin* v. *Gavit*, 268 U. S. 161, 167; *Edwards* v. *Cuba Railroad*, 268 U. S. 628, 633. In determining what constitutes income substance rather than form is to be given controlling weight. *Eisner* v. *Macomber, supra*, 206.

The transaction here in question did not result in gain from capital and labor, or from either of them, or in profit gained through the sale or conversion of capital. * * *

The identical question here presented was before this Board in the *Appeal of Independent Brewing Co. of Pittsburgh*, 4 B. T. A. 870. The facts there were that the taxpayer issued its bonds at par and subsequently purchased part of them in the open market for less than their par value. We held that the transaction did not result in taxable gain.

We are of the opinion that the decisions in the above cited cases are decisive of the question presented here, and we therefore hold that the taxpayer did not realize any income as a result of the purchase by it in the year 1918 of its own bonds under the circumstances set forth in the findings of fact.

The second question is whether that part of the 1918 income tax (2 per cent) paid for the taxpayer by the Director General of Railroads in accordance with the provisions of the Federal Control Act of March 21, 1918, constituted income to the taxpayer. This question must be answered in the negative on the authority of *Appeal of New York, Ontario & Western Ry. Co.*, 1 B. T. A. 1172.

The third issue presented is what amount, if any, the taxpayer is entitled to deduct in computing its net income for the year 1918, as amortization of bonds issued by its subsidiary, the New Iberia & Northern Railroad Co.

The record herein discloses that the New Iberia & Northern Railroad Co. had its railroad property constructed and equipped through the New Iberia Syndicate at a cost to the syndicate of $1,891,086.47, and that the railroad company in the year 1915 acknowledged the indebtedness and delivered to the syndicate in settlement thereof its capital stock of the par value of $986,600 and its first mortgage bonds of the par value of $2,000,000. Prior to the year 1918 the taxpayer purchased all of said stock and bonds from the syndicate and during the year 1918 it was affiliated with the New Iberia & Northern Railroad Co.

During the year 1918 the taxpayer owned both the capital stock and the bonds of its subsidiary and affiliated corporation, the New Iberia & Northern Railroad Co., and the bonds therefore constituted inter-company obligations, which we have held, in *Appeal of Gould Coupler Co.*, 5 B. T. A. 499, should be disregarded in determining the consolidated net income of the affiliated corporations, and upon the authority of the decision in that appeal we hold that the tax-payer, in computing its net income for the year 1918, is not entitled to deduct any amount as amortization of the bonds in question.

The fourth question is whether or not the entire amount of $1,500,-000 agreed upon by the taxpayer and the Director General of Rail-roads as just compensation for the use of the taxpayer's property during the year 1918, is income to the taxpayer for that year.

In its original income and profits-tax return for the year 1918, the taxpayer reported as its income the amount of $1,101,215.32, that being its so-called "standard return," as certified to by the Interstate Commerce Commission. After the settlement agreement was entered into with the Director General of Railroads, the taxpayer filed an amended return for the year 1918, reporting therein as its income for that year $1,500,000, the amount of its annual compensation under the agreement with the Director General. The Commissioner, upon audit of the taxpayer's amended return, determined that so much of the amount of $1,500,000 as exceeded the amount of the "standard return" was income to the taxpayer for 1921, the year in which the settlement was made with the Director General of Railroads. In our opinion the taxpayer's treatment of the amount involved herein was correct. *Appeal of Illinois Terminal Co.*, 5 B. T. A. 15.

The last question herein is whether the amount of $341,153.14, paid by the taxpayer on April 1, 1919, as interest on its non-cumulative debenture bonds for the period July 1 to December 31, 1918, is de-ductible from gross income for the year 1918 or the year 1919. In our opinion this interest is a proper deduction for the year 1918.

The indenture under which the bonds were issued provided that the net income of the taxpayer for the period July 1 to December 31, 1918, after providing for certain additions, improvements and betterments, should be applied to the payment of interest on such bonds and that the board of directors should so declare, the com-pany, however, being under no obligation to make any payment of said interest unless the net income for the fiscal year, after providing for such additions, betterments and improvements, was sufficient to pay at least 1 per cent interest on said bonds for said fiscal year. The interest in question is, and the indenture under which the bonds were issued so provided, interest for the period July 1 to December 31, 1918, and if the net income for that period was sufficient for the

payment of interest under the terms of the indenture, it was the duty of the board of directors so to declare. Whatever the income of the taxpayer was from July 1 to December 31, 1918, all of it had been earned on or before December 31, 1918, and every event had occurred and every condition was present, on or before the latter date, that determined its liability to pay interest on its bonds for that period. The board of directors was required to ascertain and determine the amount of the net income, if any, but their action could not in any way change or affect the liability of the company to pay interest if the liability had in fact accrued. If the income was sufficient, the interest was owing, if the income was not sufficient, the interest was not owing. The ascertainment and determination of the board of directors was a mere administrative action involving no discretion. If the taxpayer's books of account at the close of the period showed its net income sufficient to pay interest on the bonds in accordance with the terms of the indenture, it was mandatory upon the board of directors so to declare and order the interest paid. The interest in question, in our opinion, accrued in the sense of owing, on December 31, 1918, and was therefore a proper deduction in computing the taxpayer's net income for the year 1918.

*Judgment will be entered on 15 days' notice, under Rule 50.*

STERNHAGEN dissents in part.