*439 OPINION.
Maequette :
The first question presented herein is whether or not the taxpayer realized any income as the result of the purchase by it in the year 1918 of its own bonds for less than their par value. A similar question was presented to the Supreme Court of' the United States in the case of Bowers v. Kerbaugh-Empire Co., 271 U. S. 170. The facts in that case were that the Kerbaugh Empire Co. prior to July 2, 1913, borrowed from the Deutsche Bank of Germany the amount of $1,983,000. The loan was evidenced by notes payable, as to principal and interest, in marks or their equivalent in United States gold coin at prime bankers’ rates in New York for cable transfer to Berlin. The equivalent of the loan in marks was 8,341,-337.50. On September 1, 1913, there remained unpaid 6,740,800 marks. The notes of the company then outstanding were surrendered and a new note was given for 6,740,800 marks. When that note became due it was renewed. Partial payments were made and by March 31,1915, the principal was reduced to 3,216,445 marks.
After the United States entered the war, the Deutsche Bank became an alien enemy. In 1921, on the demand of the Alien Property Custodian, the Kerbaugh-Empire Co. paid $113,688.23 in full settlement of the principal and interest owing on the notes belonging to the Deutsche Bank. Of that amount, $80,411.12 represented principal. The settlement was on the basis of 2% cents per mark. Measured by United States gold coin, the difference between the value of the marks at the time the loan was made and the amount paid to the Custodian was $684,456.18. The Commissioner held that the last named amount was income to the Kerbaugh-Empire Co. The Supreme Court of the United States, in holding that the company did not realize any income from the transaction, said:
The question for decision is whether the difference between the value of marks measured by dollars at the time of payment to the Custodian and the value when the loans were made was income.
The Sixteenth Amendment declares that Congress shall have power to levy and collect taxes on income, “ from whatever source derived ” without apportionment among the several States, and without regard to any census or enumeration. It was not the purpose or effect of that Amendment to bring any now subject within the taxing power. Congress already had power to tax all incomes. But taxes on incomes from some sources had been held to be “ direct taxes ” within the meaning of the constitutional requirement as to apportionment. Art. I, § 2, cl. 3, § 9, cl. 4; Pollock v. Farmers’ Loan and Trust Co., 158 U. S. 601. The Amendment relieved from that requirement and obliterated the distinction in that respect between taxes on income that are direct taxes and those that are not, and so put on the same basis all incomes “from whatever source derived.” Brushaber v. Union Pac. R. R., 240 U. S. 1, 17. “Income” has been taken to mean the same thing as used in the Corporation Excise Tax Act of 1909, in the Sixteenth Amendment and in the various revenue acts subsequently passed. Southern Pacific Co. v. Lowe, 247 *440 U. S. 330, 335; Merchants L. & T. Co. v. Smietanka, 255 ü. S. 509, 519. Alter full consideration, this Court declared that income may be defined as gain derived from capital, irom labor, or from both combined, including profit gained through sale or conversion of capital. Stratton’s Independence v. Howbert, 231 U. S. 399, 415; Doyle v. Mitchell Brothers Co., 247 U. S. 179, 185; Eisner v. Macomber, 252 U. S. 189, 207. And that definition has been adhered to and applied repeatedly. See e. g. Merchants L. & T. Co. v. Smietanka, supra, 518; Goodrich v. Edwards, 255 U. S. 527, 535; United States v. Phellis, 257 U. S. 156, 169; Miles v. Safe Deposit Co., 250 U. S. 247, 252-253; United States v. Supplce-Biddle Co., 205 U. S. 189, 194; Irwin v. Gavit, 268 U. S. 161, 167; Edwards v. Cuba Railroad, 268 U. S. 628, 633. In determining what constitutes income substance rather than form is to be given controlling weight. Eisner v. Macomber, supra, 206.
The transaction here in question did not result in gain from capital and labor, or from either of them, or in profit gained through the sale or conversion of capital. * * *
The identical question here presented was before this Board in the Appeal of Independent Brewing Co. of Pittsburgh, 4 B. T. A. 870. The facts there were that the taxpayer issued its bonds at par and subsequently purchased part of them in the open market for less than their par value. We held that the transaction did not result in taxable gain.
We are of the opinion that the decisions in the above cited cases are decisive of the question presented here, and we therefore hold that the taxpayer did not realize any income as a result of the purchase by it in the year 1918 of its own bonds under the circumstances set forth in the findings of fact.
The second question is whether that part of the 1918 income tax (2 per cent) paid for the taxpayer by the Director General of Bail-roads in accordance with the provisions of the Federal Control Act of March 21,1918, constituted income to the taxpayer. This question miist be answered in the negative on the authority of Appeal of New York, Ontario & Western Ry. Co., 1 B. T. A. 1172.
The third issue presented is what amount, if any, the taxpayer is entitled to deduct in computing its net income for the year 1918, as amortization of bonds issued by its subsidiary, the New Iberia & Northern Bailroad Co.
The record herein discloses that the New Iberia & Northern Bail-road Co. had its railroad property constructed and equipped through the New Iberia Syndicate at a cost to the syndicate of $1,891,086.47, and that the railroad company in the year 1915 acknowledged the indebtedness and delivered to the syndicate in settlement thereof its capital stock of the par value of $986,600 and its first mortgage bonds of the par value of $2,000,000. Prior to the year 1918 the taxpayer purchased all of said stock and bonds from the syndicate and during the year 1918 it was affiliated with the New Iberia & Northern Bail-road Co.
*441 During the year 1918 the taxpayer owned both the capital stock and the bonds of its subsidiary and affiliated corporation, the New Iberia & Northern Bailroad Co., and the bonds therefore constituted inter-company obligations, which we have held, in Appeal of Gould Coupler Co., 5 B. T. A. 499, should be disregarded in determining the consolidated net income of the affiliated corporations, and upon the authority of the decision in that appeal we hold that the taxpayer, in computing its net income for the year 1918, is not entitled to deduct any amount as amortization of the bonds in question.
The fourth question is whether or not the entire amount of $1,500,-000 agreed upon by the taxpayer and the Director General of Bail-roads as just compensation for the use of the taxpayer’s property during the ye'ar 1918, is income to the taxpayer for that year.
In its original income and profits-tax return for the year 1918, the taxpayer reported as its income the amount of $1,101,215.32, that being its so-called “ standard return,” as certified to by the Interstate Commerce Commission. After the settlement agreement was entered into with the Director General of Bailroads, the taxpayer filed an amended return for the year 1918, reporting therein as its income for that year $1,500,000, the amount of its annual compensation under the agreement with the Director General. The Commissioner,, upon audit of the taxpayer’s amended return, determined that so much of the amount of $1,500,000 as exceeded the amount of the “standard return ” was income to the taxpayer for 1921, the year in which the settlement was made with the Director General of Bailroads. In our opinion the taxpayer’s treatment of the amount involved herein was correct. Appeal of Illinois Terminal Co., 5 B. T. A. 15.
The last question herein is whether the amount of $341,153.14, paid by the taxpayer oh April 1, 1919, as interest on its non-cumulative debenture bonds for the period July 1 to December 31, 1918, is deductible from gross income for the year 1918 or the year 1919. In our opinion this interest is a proper deduction for the year 1918.
The indenture under which the bonds were issued provided that the net income of the taxpayer for the period July 1 to December 31, 1918, after providing for certain additions, improvements. and betterments, should be applied to the payment of interest on such bonds and that the board of directors should so declare, the company, however, being under no obligation to make any payment of said interest unless the net income 'for the fiscal year, after providing for such additions, betterments and improvements, was sufficient to pay at least 1 per cent interest on said bonds for said fiscal year. The interest in question is, and the indenture under which the bonds were issued so provided, interest for the period July 1 to December 31, 1918, and if the net income for that period was sufficient for the *442 payment of interest under the terms of tbe indenture, it was the duty of the board of directors so to declare. Whatever the income of the taxpayer was from July 1 to December 31, 1918, all of it had been earned on or before December 31, 1918, and every event had occurred and every condition was present, on or before the latter date, that determined its liability to pay interest on its bonds for that period. The board of directors was required to ascertain and determine the amount of the net income, if any, but their action could not in any way change or affect- the liability of the company to pay interest if the liability had in fact accrued. If the income was sufficient, the interest was owing, if the income was not sufficient, the interest was not owing. The ascertainment and determination of the board of directors was a mere administrative action involving no discretion. If the taxpayer’s books of account at the close of the period showed its net income sufficient to pay interest-on the bonds in accordance with the terms of the indenture, it was mandatory upon the board of directors so to declare and order the interest paid. The interest in question, in our opinion, accrued in the sense of owing, on December 31, 1918, and was therefore a proper deduction in computing the taxpayer’s net income for the year 1918.

Judgment will be entered on 15 days’ notice, under Rule 50.

SterNi-iageN dissents in part.