DOUGLAS COUNTY LIGHT & WATER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25175. Promulgated January 8, 1929.

*Robert T. Jacob, Esq.*, and *Alfred P. Dobson, Esq.*, for the petitioner.

*Warren Wattles, Esq.*, for the respondent.

OPINION.

MILLIKEN: So far as the year 1922 is concerned the only question before us is the correctness of respondent's refusal to allow a deduction for the note of A. Welch for $16,000, as all other adjustments made by respondent for that year were agreed to by petitioner at the hearing.

The evidence shows and both parties agree that this claim of $16,000 represented by the note had its origin in an embezzlement or misappropriation of petitioner's bonds between 1912 and 1915. Section 234 (a) of the Revenue Act of 1921 provides for deductions for "losses sustained during the taxable year and not compensated for by insurance or otherwise" and "debts ascertained to be worthless and charged off within the taxable year."

When these bonds were misappropriated, a "loss" occurred and entitled petitioner to a deduction therefor in the year when taken. We do not believe that the taking of a note six years later can have the effect of converting what was a "loss" into a "debt" or a tort into a contract.

In the case of *Peterson Linotyping Co.*, 10 B. T. A. 542, the treasurer of the company had embezzled $41,023.79 of its funds in 1914. In 1916 the company brought suit against the treasurer to recover the money. While the action was still pending, the treasurer in 1921 went into bankruptcy and the company received nothing on its claim. It claimed deduction as for a bad debt in 1921, but it was held that a "loss" occurred when the funds were embezzled in 1914, and that it could not be deducted in 1921 as a "bad debt." It was there said:

\* \* \* The issue here presented has been decided by this Board in several cases adversely to the contention that the petitioner herein makes. In *Parker Wire Goods Co.* v *Commissioner*, 8 B. T. A. 448, the facts of which are very

similar to those of the instant proceeding, we held that a fraudulent appropriation of petitioner's goods constituted "losses sustained," rather than "debts ascertained to be worthless." We think that the conclusion reached in that case is sound and applicable here and that the embezzlement by Budde from the Regan Printing House, Inc., constituted a loss to the company but did not create the relation of debtor and creditor. No doubt the company had a cause of action against Budde to recover the money he had embezzled, but the right to recover did not rest upon either an express or an implied contract.

A loss can only be deducted from income for the year when it was sustained. In *John II. Farish* v. *Commissioner*, 7 B. T. A. 793, it was held that the petitioner's loss by embezzlement, as here, occurred when the money was taken although petitioner did not know of the embezzlement until a later year. The same holding was announced by the United States District Court for the Southern District of Ohio in the case of *United States* v. *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.*, February 23, 1916, unreported. In that case the court said:

> The time of the discovery of the loss bears no relation to the date the loss was sustained. The loss was sustained when the theft occurred, although the defendant did not know at the time of the depletion, of the depletion of its assets.

See also *Appeals of J. A. Bentley* and *E. W. Zimmerman*, 5 B. T. A. 314.

The record herein establishes clearly that the embezzlement by Budde took place in the year 1914. The resulting loss to the Regan Printing House, Inc., was therefore sustained in that year and it may not be deducted in computing net income for a later year.

See also the decision of the Court of Claims in *Piedmont Grocery Co.* v. *United States*, 66 Ct. Cls. 468. The action of respondent in disallowing the deduction of the $16,000 note of A. Welch for 1922 is approved.

The errors alleged for 1923 are the inclusion in income of the alleged profit made by petitioner in the redemption and cancellation of its second mortgage bonds, and the correct amount of depreciation to be allowed in determining profit on sale of petitioner's properties.

We have held in a number of cases that the redemption or cancellation of its own bonds, or payment of its indebtedness at less than par or the amount of the debt by a taxpayer did not result in taxable income. Cf. *Bowers* v. *Kerbough-Empire Co.*, 271 U. S. 170; *Meyer Jewelry Co.*, 3 B. T. A. 1319; *Independent Brewing Co. of Pittsburgh*, 4 B. T. A. 870; *New Orleans, Texas & Mexico Ry. Co.*, 6 B. T. A. 436; *Houston Belt & Terminal Ry. Co.*, 6 B. T. A. 1364; *American Seating Co.*, 14 B. T. A. 328; *National Sugar Manufacturing Co.*, 7 B. T. A. 577. The fact that in this case the purchaser did the actual purchasing of the bonds does not change the effect, for it was done with a part of the purchase money to which the petitioner was entitled. The legal effect was just the same as if the

entire $600,000 had been paid to the petitioner and it had then paid off the bonded indebtedness out of the $600,000, or if petitioner had first settled the bonded indebtedness with its own funds and then received the entire $600,000. In any case the bonds were canceled with petitioner's funds and it is immaterial which party carried out the actual details of the transaction. The method adopted was probably the most convenient and economical for all concerned, and is of common occurrence in sales of encumbered real estate.

The inclusion of $59,413.17 alleged profit on cancellation of bonds in 1923 income was error.

Relative to the correct amount of depreciation to be allowed on sale of petitioner's assets, we believe $110,943.74, the amount fixed by the petitioner, fair and reasonable. It is in evidence that this amount was fixed by the directors and managing officers of the petitioner through a series of years and that in addition thereto it was the consistent policy of petitioner to keep repairs and maintenance up in the highest degree. These costs were $98,474.20 and of course prolonged the useful life of the property, which was from 30 to 40 years.

In *Otis Steel Co.*, 6 B. T. A. 358, we said on page 363:

* * * Two of the three errors alleged by the petitioner relate to depreciation. The Commissioner increased depreciation for the years prior to 1918 and decreased it for the year 1918.

The depreciation written off on the books of petitioner, for the years 1912 to 1918, inclusive, results from an actual physical examination and inspection of its plant, machinery and equipment, made by the official in charge of production and one who, for over thirty years, had been in active touch with the business. He took into consideration the actual use and extent of operations of the plant, the cost and age of the various types of depreciable assets; had before him the experience of the company in the past, reflecting the useful life of its assets; and was intimately connected with repairs made to the machinery and equipment each year. With this information before it, the petitioner charged off depreciation. The amount to be charged off as depreciation has been changed by the respondent, both in years prior to and for the year 1918. We are of the opinion that the long experience of the official of petitioner and the relevant factors which he used in determining depreciation, are to be preferred to depreciation determined upon a straight-line basis. * * *

The depreciation as fixed by petitioner was the judgment of men of experience and familiarity with the property for a number of years and is accepted as reasonable.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

STERNHAGEN and TRAMMELL dissent.