JOHN F. CAMPBELL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19591. Promulgated February 15, 1929.

*John F. Richter, Esq.*, and *Harry Friedman, Esq.*, for the petitioner.

*L. A. Luce, Esq.*, for the respondent.

OPINION.

SIEFKIN: The petitioner argues that the facts in this proceeding bring it squarely under the Board's decision in *Meyer Jewelry Co.*, 3 B. T. A. 1319, where it was held that the cancellation of indebtedness by agreement of creditors under the circumstances set forth in the case did not constitute income. The respondent, on the other hand, makes three contentions: (1) That the cancellation of indebtedness (or " allowance," as the respondent prefers to call it) constitutes a reduction in the cost of goods sold; (2) that it is taxable income in

the year received; and (3) that the facts are distinguishable from those in *Meyer Jewelry Co.*, *supra*.

As to his first contention, the respondent concedes that if the goods as to which the allowance was made were purchased in 1921, the allowance or cancellation of indebtedness would not be income. But, he says, the petitioner has not met his burden of proof to the extent of showing that all the goods were purchased in 1921. The respondent also argues that if any part was purchased in 1920, the basis for the inventory at the end of that year not being shown, it is a necessary part of the petitioner's case to show that no part of the purchases in question, if any, was in fact included in the cost of goods sold in 1921.

We think this contention is not well taken, being raised for the first time in the brief of the respondent. The record shows that the Commissioner added the amount in question to income because he held that cancellation of indebtedness constituted income under the regulations and the Bureau's rulings. The petitioner, by his petition, questioned that conclusion, and issue was joined by the respondent on the allegations of the petitioner that the amount canceled did not constitute income.

As to the respondent's second and third contentions, it is also our opinion that they can not be sustained. As we view this proceeding, the facts are not distinguishable from those in *Meyer Jewelry Co.*, *supra*, and our conclusion must be the same as in that case. The respondent erred in adding $50,087.51 to income in 1921.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

TRAMMELL dissents.

---

STERNHAGEN, dissenting: This petitioner kept its books and made its returns on the so-called accrual basis. In computing its taxable income for 1920, it deducted cost of goods sold ($4,021,822.22), from gross sales ($4,081,842.81), and stated the difference ($60,020.59) as gross income in arriving at net ($5,443.13). The cost of goods sold as shown on its return was figured by using inventories at the beginning ($154,472.72) and end ($37,405.41) of the year. There can be no escape from the belief that the stipulated costs of $24,700 incurred to the Howell Company and $114,200 incurred to the Colonial Company were deducted as accrued costs in computing taxable net income for 1920. It does not appear when the further amount of $6,882.15 was incurred for goods purchased, but presumably it too was deducted prior to 1921 as an accrued cost. Thus, in accordance with its own system of accounts, the petitioner has kept down its taxable income for 1920 by deducting, not a payment, but a liability to pay. If it

had adopted the system of actual receipts and disbursements, it would have had no such deduction in 1920 and its deduction in 1921 would have been the amount actually paid. See *Rouss* v. *Bowers*, 30 Fed. (2d) 628.

There can be no doubt of petitioner's right, under section 212, regularly to employ an accrual method of accounting, *United States* v. *Anderson*, 269 U. S. 422, or of the propriety, under that method, of deducting costs in the year of accrual prior to payment. But the fact that it has employed such a method and has taken such a deduction requires that items of income are not to be regarded as if isolated, but requires the inquiry whether the treatment claimed for the item in question is such that the accounting method thus employed will clearly reflect income, as required by section 212. Either the item must be adjusted within the method to bring about a clear reflection of income, or else the entire method must be adjusted to such required result.

The assumptions of the accrual system which justify its recognition as a means of arriving at taxable income include the assumption that when a deduction is taken for a cost incurred there is a genuine anticipation of payment, and since the payment will surely in future be made, it is entirely fair that the deduction be made when the liability accrues instead of when paid, so long as the system adopted be consistent and free from material distortion. Under such a system, gain or loss can only be ascertained by giving consideration to the relation of each fact recognized in the accounts to the other facts. This is undeniably true when, as is the case here, each year is, by the use of inventories and net losses, tied up with the other years and not separately considered. The closing inventory of 1920 is the opening inventory of 1921, both years are measured by the same standard, and consistency is vital to a true reflection of income. *Thomas Shoe Co.*, 1 B. T. A. 124. The net loss provision of section 204 is founded upon an offset of the misfortunes of one year against the fortune of another. There is also on the return of 1921 an item of worthless debts of $23,008.16, which is deducted because " the credits were previously reported as income in prior years." It seems to me that just as integrity is implicit in the honor system upon which the income tax and its returns are founded, so consistent and proper adjustments are implicitly required by a voluntary accrual system. When a deduction has been enjoyed upon the assumption that a liability will be met to its full extent and the assumption subsequently proves erroneous, a proper adjustment should be made by way of either restating the deduction for 1920 or treating the amount subsequently remitted as a gain in 1921. The choice between these two adjustments is not so much controlled by established legal

principles as it is by the necessity of administering the income tax as simply as is consistent with equality of taxation. To me it seems fair and simpler in a case such as this to treat the remitted excess as a gain in 1921 rather than to revoke its deduction in 1920.

But to say, as the Board holds, that there needs to be no adjustment whatever—that there has been no gain and hence no income—is to ignore the very substance in which the taxpayer's income is embodied and to bring about an obvious distortion which must threaten the continued recognition of an accrual system. Is there any more reason to ignore the petitioner's gain than there is to ignore the loss to the creditors? They too had probably adopted an accrual system and had in 1920 accrued as income the sales price to the petitioner. See *Amalgamated Sugar Co.*, 4 B. T. A. 568. When in 1921 they remitted part of it, they no doubt took a deduction. While I am not always moved by formality of reasoning, it is just as impelling here as it was to the Supreme Court when it decided in *United States* v. *Flannery*, 268 U. S. 98, that deductions for capital losses, although not restricted by the Constitution, were gauged by the rational symmetry implied by taxing capital gains, as held in *Goodrich* v. *Edwards*, 255 U. S. 527.

The facts stipulated in this case do not show the occasion for remitting the debts. I apprehend that the parties were making a distribution of the effects of the sugar slump. There is no evidence of insolvency, bankruptcy, or winding up of business. There has been no irretrievable loss of assets. To the contrary, petitioner continued in ordinary course to carry on its business. Its balance sheets show a substantial net worth. It had no actual loss in 1921 (except $458.13), and it is only by blindly ignoring the remission of its debts that a constructive loss can be found. In 1922 its business revived to the extent of a profit of $4,018.22, and in 1923 it earned $34,755.43. These profits, earned in the ordinary course of business, go entirely free from tax by applying a fictitious net loss of 1921 of $50,087.51. The effect is a repeated deduction of the same item—once in 1920 as accrued cost of goods and again as a net loss in 1922 and 1923. The assumption which supports the accrual and deduction in 1920 leaps nimbly over the fact of remission in 1921 and lands serenely in time to reduce taxes for 1922 and 1923! Thus the case goes far beyond what I thought was an extreme illustration of the fallacy in *National Sugar Manufacturing Co.*, 7 B. T. A. 577, and I am unable to believe that these decisions can find root in the unique facts of the *Kerbaugh-Empire* case, 271 U. S. 170.

I think the respondent's determination should be sustained.