*791 OPINION.
Sternhagen:
1. The first issue arises from the respondent’s determination that petitioner’s income should include the difference between the face value of its outstanding mortgage bonds ($5,524,900) and the lower price ($4,157,175) for which it bought them. The bonds were issued within the taxable year as part of the reorganization plan by which it acquired the properties of the predecessor corporation. Before the close of the year it discharged this capital obligation by paying less. Under circumstances less favorable to the taxpayer, the Board has in several cases decided that there is no gain to be included in income. Independent Brewing Co., 4 B. T. A. 870; New Orleans, etc., Ry. Co., 6 B. T. A. 436; Houston Belt, etc., Co., 6 B. T. A. 1364; National Sugar Mfg. Co., 7 B. T. A. 577; Petaluma, etc., R. R. Co., 11 B. T. A. 541; General Manifold, etc., Co., 12 B. T. A. 436; American Seating Co., 14 B. T. A. 328; Douglas County Light, etc., Co., 14 B. T. A. 1052; John F. Campbell Co., 15 B. T. A. 458.
Following those decisions, we hold the respondent in error on this issue.
2. The important fact in the second issue is that stipulated in paragraph 28 — that prior to March 27, 1923, the petitioner had made no application for permission to set up a replacement fund or file bonds.
We have no doubt that an amount received by a taxpayer as compensation for property requisitioned is, to the extent of any excess over cost (or, in a proper case, value on March 1, 1913), with proper adjustments for depreciation, properly to be regarded as income. It is properly to be included in the statutory definition of gross income from whatever source derived, and this is none the less so if, in arriving at net, the statute provides, as in the Revenue Act of 1921, section 234 (a) (14), for a deduction of the portion of gain *792 used or to be used in replacement. Pelican Bay Lumber Co. v. Commissioner, 31 Fed. (2d) 15; affirming 9 B. T. A. 1024; certiorari denied, 279 U. S. 870. Cf. Lehigh & H. R. Ry. Co., 13 B. T. A. 1154. We find no support in United States v. Supplee Biddle Hardware Co., 265 U. S. 189, for a contrary view. That decision was based squarely on the construction of the statute that a special treatment of the proceeds of life insurance expressly accorded to individuals was also applicable to corporations. The discussion contained in the opinion as to the nature of such proceeds did not reach a definitive conclusion and there is no reason to expand it beyond the life insurance there under consideration. Cf. Lucas v. Alexander, 279 U. S. 573.
Under the Revenue Acts of 1916, 1917, and 1918, the gain in compensation for requisitioned property was regarded by the Treasury Department as income, provision being made for relieving it from tax in certain circumstances. Regulations 33 (revised), article 94; Treasury Decision 2706, 20 T. D. 348; Regulations 45, articles 49 and 50. The validity of this favorable treatment prior to the Revenue Act of 1921, it is not necessary to consider here, see Pelican Bay Lumber Co. v. Commissioner, 31 Fed. (2d) 15.
The Revenue Act of 1921 was the first to embody a provision in respect of involuntary sale or conversion. Section 234 (a) (14) is as follows:
Seo. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:
⅜ # * * ⅝ ⅜: *
(14) If property is compulsorily or involuntarily converted into cash or its equivalent as a result of (A) its destruction in whole or in part, (B) theft or seizure, or (C) an exercise of the power of requisition or condemnation, or the threat or imminence thereof; and if the taxpayer proceeds forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, to expend the proceeds of such conversion in the acquisition of other property of a character similar or related in service or use to the property so converted, or in the acquisition of 80 per centum or more of the stock or shares of a corporation owning such other property, or in the establishment of a replacement fund, then there shall be allowed as a deduction such portion of the gain derived as the portion of^the proceeds so expended bears to the entire proceeds. The provisions of this paragraph prescribing the conditions under which a' deduction may be taken in respect of the proceeds or gains derived from the compulsory or involuntary conversion of property into cash or its equivalent, shall apply so far as may be practicable to the exemption or exclusion of such proceeds or gains from gross income under prior income, war-profits and excess-profits tax Acts.
The last sentence, it will be noted, applies the treatment as deductions retroactively to similar situations occurring under prior acts. It is by virtue of this statutory provision alone that petitioner can make a plausible claim of right against the deficiency. Under it *793 actual immediate expenditure in replacement or the establishment of a replacement fund permitted the deduction; but only “ under regulations prescribed by the Commissioner with the approval of the Secretary.” Such regulations, from T. D. 2706, in 1918, through Regulations 45 (T. D. 2831, in 1919, and T. D. 3146, in 1921) into Regulations 62, under the 1921 Act, required application to and approval of the Commissioner of Internal Revenue and the giving of a bond. The statute provided no deduction otherwise; and since such requirements had been imposed by the Treasury Department in its regulations, the only reasonable construction of the conditions contained in the 1921 Act is that these requirements were expressly intended as conditions of the deduction. The petitioner did not fulfill this condition, and the Commissioner may not be required to compute the deficiency as if it did. “ Men must turn square corners when they deal with the Government,” Rock Island, etc., Co. v. United States, 254 U. S. 141; Botany Worsted Mills v. United States, 278 U. S. 282.
The determination on this point is sustained.

Judgment will be entered und.er Rule 50.