JOHN THATCHER & SON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 56888, 65545. Promulgated April 26, 1934.

*Benjamin Wiener, Esq.*, and *Herman Goldman, Esq.*, for the petitioner.

*T. M. Mather, Esq.*, for the respondent.

#### OPINION.

MATTHEWS: These proceedings are for the redetermination of deficiencies asserted against the petitioner for the years 1928 and 1929 in the respective amounts of $6,190.12 and $3,039.64. With respect to the year 1928 it is alleged in the petition filed in Docket No. 56888 that the respondent erred in disallowing as a deduction

from income for the taxable year the sum of $63,785.60 representing losses which the petitioner claims to have sustained in carrying out certain contracts. Had this deduction been allowed petitioner alleges that it would have sustained a net loss for the year in the amount of $20,767.75, and the sole issue raised in Docket No. 65545 is whether this alleged net loss for 1928 in the amount of $20,767.75 may be allowed as a deduction in computing the petitioner's net income for 1929.

The facts have been stipulated by the parties as follows:

The petitioner is a corporation, organized under the laws of the State of New York in December 1907. During the years 1928 and 1929 it was engaged in the building construction business.

In March 1917 it entered into a contract with the Benevolent Association of Elks, a domestic corporation, in the city of New Orleans, Louisiana, for the construction in that city of an Elks Lodge, which was completed in 1919.

The petitioner entered into subcontracts for the performance of certain parts of the work. Each of the subcontracts contained the following provision:

Article XIII. Should the Sub-contractor at any time refuse or neglect to supply a sufficiency of proper skilled workmen, or of material of proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, the Contractor shall be at liberty, after three days' written notice to the Sub-contractor, to provide any such labor and materials, and to deduct the cost thereof, from any money then due or thereafter to become due to the Sub-contractor under this agreement; and if the Architects shall certify that such refusal, neglect or failure is sufficient ground for such action, the Contractor shall be at liberty to terminate the employment of the Sub-contractor for said work and to enter upon the premises and take possession of all materials thereon, and employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the said Sub-contractor, said Sub-contractor shall not be entitled to receive any further payment on this contract until the work is wholly completed, at which time, if the unpaid balance of the amount to be paid under the contract shall exceed the expenses incurred by the Contractor in finishing the work, such excess shall be paid by the Contractor to the Sub-contractor, but if the expense shall exceed the balance, the Sub-contractor shall pay the difference to the Contractor. The expenses incurred by the Contractor as herein provided, either for furnishing the material or for finishing the work, and any damage incurred by such default, shall be audited and certified by the Cashier of said Contractor, whose certificate thereof shall be conclusive upon the parties.

It was further provided in these subcontracts that the subcontractor should furnish a bond with a surety company, as surety in behalf of the contractor, " for the faithful performance of this contract, as well as for the payment of all liquidated damages or other damages which may be sustained by said Contractor by reason of the default of said

Sub-contractor, or of his violation of any part of the terms and conditions of this contract  *  *  *."

Subcontracts were let to H. W. Bond & Brother, W. T. Carey, T. Carey, and J. J. Swiler, who were bonded by the petitioner with the Fidelity & Deposit Co. of Maryland.

The subcontractors defaulted in their contracts and the petitioner as the main contractor was obliged to carry out the contracts at a cost to it of $63,785.60 in excess of what it received for completing the work, as follows:

| | |
|---|---:|
| H. W. Bond & Brother | $1, 398. 57 |
| W. T. Carey | 18, 273. 83 |
| T. Carey | 17, 992. 32 |
| J. J. Swiler | 26, 120. 88 |
| Total | 63, 785. 60 |

The petitioner sought to recover these amounts (aggregating $63, 785.60) from the bonding company, which refused to pay, whereupon legal proceedings were instituted in the courts of Louisiana, which proceedings culminated in a decision by the Supreme Court of that State (rendered in 1928) and reported in 117 Southern, page 729.

On its original return for 1928 the petitioner deducted under the heading " bad debts " the amount of $63,785.60, claiming a net loss for the year of $20,767.75, which was disallowed by the Commissioner. For the year 1929, the petitioner claimed as a deduction from income the amount of $20,767.75 as a statutory net loss carried forward from the year 1928, which was disallowed by the Commissioner.

The books of the petitioner were kept on the accrual basis for all of the years involved herein.

The respondent does not deny that a loss was sustained by the petitioner in the amount claimed, which loss grew out of the failure of the subcontractors to carry out their contracts, but it is the respondent's position that such loss occurred between 1917 and 1919 and can not be allowed as a deduction from petitioner's income for 1928. The petitioner urges that, until the court rendered its decision in the action brought against the subcontractors and the surety company, the amount of the loss was not determinable because, if the court had decided against the surety company and the surety company had been obliged to compensate the petitioner for the damages sustained by reason of the default of the subcontractors, no loss at all would have been sustained by the petitioner. The petitioner has pointed out that the Supreme Court of Louisiana denied the defendants' motion to dismiss the appeal, holding that the petitioner had a right of action against the subcontractors and the

surety company on the bonds which had been furnished pursuant to the provisions of the subcontracts, but decided the case against the petitioner on the merits on the ground that the petitioner had not kept proper records and had failed to prove its cause of action against the surety company in accordance with the provisions of the surety bonds.

We must determine, therefore, in what taxable year the petitioner's loss is deductible under the provisions of the applicable statute, which provides that in computing the net income of a corporation there shall be allowed as deductions " losses sustained during the taxable year and not compensated for by insurance or otherwise."

It is contemplated by the statute that a deduction shall be allowed when a loss has actually been sustained. As was said by the Supreme Court of the United States in the case of *Lucas* v. *American Code Co.*, 280 U.S. 445: " Generally speaking, the income tax law is concerned only with realized losses, as with realized gains." But the establishment of a deductible loss is a question of fact in each case and may not always depend upon the happening of any particular event. In the instant case, it is clear that when the subcontractors defaulted in their contracts, which default took place within the period from March 1917, when the main contract for the construction of the Elks Lodge in New Orleans was entered into by the petitioner, and that date in 1919 when the building was completed, there was merely the possibility of a loss. The petitioner was entitled to bring suit against the subcontractors for breaching their contracts, and even if it failed to recover against the subcontractors the petitioner had an additional right of action against the surety company on the bonds. Suit was instituted against the surety company in good faith and the litigation was not settled until in 1928. Upon its settlement, the possibility of loss became a reality.

The case of *Lucas* v. *American Code Co.*, *supra*, is cited and relied upon by both parties to these proceedings. In that case the Supreme Court refused to allow a deduction for loss on account of breach of contract for the year in which the breach occurred. The Court rejected the theory that a loss is sustained when the events occur which fix it, so as to preclude a deduction for it in a later year when in a practical sense it is determined by litigation brought to a final conclusion. This principle has also been applied in *Burnet* v. *Huff*, 288 U.S. 156, where the Supreme Court said:

We find it unnecessary to discuss the question whether Huff was bound to make good the amount taken from the funds of the association by his co-partner. We may assume that he was. But the mere existence of liability is not enough to establish a deductible loss. * * * And whether a taxpayer will actually sustain a loss through embezzlement of trust funds of which he is trustee

will depend upon a variety of circumstances. If there is liability on his part for the misappropriation, it does not create a certainty of loss, as the defalcation may be made good by the one who caused it, or the liability of the taxpayer may be enforced only to a limited extent or not at all. The requirement that losses be deducted in the year in which they are sustained calls for a practical test. The loss "must be actual and present." *Weiss* v. *Wiener*, 279 U.S. 333, 335; *Lucas* v. *American Code Co.*, *supra; Eckert* v. *Burnet*, 283 U.S. 140, 141, 142.

In *Daniels & Fisher Stores Co.* v. *United States*, 56 Fed. (2d) 477, 480, the court said:

We think that losses which depend on the result of a contested action in court cannot be said to be definitely fixed prior to the rendition of judgment therein. In *Lucas* v. *American Code Co.*, 280 U.S. 445, 50 S. Ct. 202, 203, 74 L. Ed. 538, a somewhat similar case, it is said with reference to a loss arising on a breach of contract: "The mere refusal to perform a contract does not justify the deduction, as a loss, of the anticipated damages. For, even an unquestionable breach does not result in loss, if the injured party forgives or refrains from prosecuting his claim. And, when liability is contested, the institution of a suit does not, of itself, create certainty of loss."

In *Malleable Iron Range Co.* v. *United States*, 62 Ct. Cls. 425, the court held that where a taxpayer made its income tax returns on the accrual basis for the years 1918 and 1919 it could not deduct therein from its gross income the amount of a judgment decreed against it on January 15, 1918, by a District Court of the United States as damages for patent infringement where the taxpayer's appeal to the Circuit Court was affirmed and the judgment increased, in a decision rendered March 15, 1920. The court said, at page 432:

It would seem plain from the foregoing that when there is a question of whether or not there is any liability, no amount can accrue until it is determined that a liability exists. When the amount in question is in litigation it cannot be determined until the litigation is ended. If any other rule were adopted it would inevitably result in confusion and there would be no certainty at any given time as to when the liability should be allowed for. * * *

\* \* \* Until all the events occurred which fixed the amount to be deducted, and determined the liability of the taxpayer to pay it, there was no method by which the Commissioner of Internal Revenue could assess the amount of the tax.

On certiorari the case was remanded to the Court of Claims for additional findings. It was found that in 1918 the taxpayer pledged in trust United States bonds in a sum sufficient to guarantee the payment of the judgment should the judgment of the higher court be adverse. In an opinion reported at 65 Ct. Cls. 441, the court held that since the taxpayer would undoubtedly have been entitled to accrue the amount paid, if it had paid the judgment in 1918 and taken an appeal, the taxpayer properly accrued the amount of the judgment in 1918. It was pointed out that the bonds were the

equivalent of and readily convertible into cash so that their availability as an asset in the taxpayer's business was destroyed as completely as if their value in cash had been withdrawn from its treasury. Thus, it was decided that the taxpayer could take a deduction in 1918, although the judgment was not paid until in 1920, but this decision was grounded on the fact that United States bonds in excess of the amount of the judgment were deposited in 1918 as security pending the outcome of the appeal.

In *Douglas County Light & Water Co.* v. *Commissioner*, 43 Fed. (2d) 904, reversing 14 B.T.A. 1052, it was held:

Claimed deductions for doubtful debts or inchoate losses are not to be encouraged, and therefore the taxpayer ought not to be penalized for deferring his claim for deductions until he has in good faith resorted to reasonable measures for avoiding or minimizing a threatened loss.

In *Lewellyn* v. *Electric Reduction Co.*, 275 U.S. 243, the Supreme Court refused to allow the deduction of a loss in 1918, since in such case there was "nothing in the findings from which we could conclude that the respondent in 1918 had ceased to regard his rights under the contract as having value or that there was then reasonable ground to suppose that efforts to enforce them would be fruitless." In that case the terms of a contract were breached by the seller in 1918 and it was this breach of contract which gave rise to the loss claimed by the taxpayer, as buyer, but the Supreme Court stated:

But we do not think that a loss resulting from a buyer's prepayment to a seller who proves to be irresponsible is necessarily sustained, in the statutory meaning, as soon as the money is paid. The statute was intended to apply not only to losses resulting from the physical destruction of articles of value but to those occurring in the operations of trade and business, where the business man has ventured on a course of action in the reasonable expectation that the promised conduct of another will come to pass. Not only the future success of the business but its present solvency depends on the probable accuracy of his prophecy. Only when events prove the prophecy to have been false can it be said that he has suffered.

See also *Highway Trailer Co.*, 28 B.T.A. 792, on appeal to the Circuit Court of Appeals for the Seventh Circuit, and cases cited therein; *North American Coal Corp.*, 28 B.T.A. 807.

On authority of the above decisions we hold that the petitioner is entitled to a deduction from its income for 1928 in the sum of $63,785.60, and that the resulting net loss, if any, for the year 1928 should be allowed as a deduction in computing the petitioner's net income for 1929.

*Judgment will be entered under Rule 50.*