WILMORE STEAMSHIP COMPANY, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 53297. Promulgated June 7, 1934.

*John B. Sullivan, Jr., Esq.*, for the petitioner.
*Prew Savoy, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: The respondent determined a deficiency of $113,-864.60 in petitioner's tax for the year 1928. Of the errors alleged there remains only one—whether petitioner is taxable on certain sums received in 1928 on account of an award of the Mixed Claims Commission because of the sinking by a German submarine of a vessel owned by petitioner. The respondent on brief concedes that the amount originally determined was in error and that only amounts received in 1928 should be included. He also concedes the deductibility of the sum of $40,184.17 paid by petitioner in 1928 for legal services in connection with obtaining the award and payment thereunder.

The facts were stipulated by the parties, only so much of the stipulated facts as are deemed pertinent being here set forth in connection with our discussion of the issue.

The petitioner, a New York corporation with its principal office in New York City, on or about July 12, 1916, acquired by purchase a steamer known as S.S. *Wilmore* at a cost price of $1,742,340. On or about September 12, 1917, the *Wilmore* was torpedoed and sunk by a German submarine, and became a total loss. In 1917 the petitioner recovered the sum of $1,750,000 insurance on the *Wilmore*, and reported in its tax return for that year as a part of its gross income the amount of $377,241.06, being the difference between the cost of the steamer, less depreciation to the date of destruction, and the amount recovered under the insurance contract.

On or about February 17, 1926, the Mixed Claims Commission, United States and Germany, entered an award on behalf of the petitioner in the sum of $650,000, together with interest at the rate of 5 percent per year from November 11, 1918, to date of payment, based upon the fair market value of the *Wilmore* on September 12, 1917, less the amount of insurance recovered by the petitioner.

In accordance with the Settlement of War Claims Act of 1928, the Secretary of the Treasury computed interest on the sum of $650,000 from November 11, 1918 to January 1, 1928, and the principal amount of the award, plus the interest so computed thereon, amounting in the aggregate to $947,041.10, became the principal upon which interest at the rate of 5 percent per year was payable thereafter, under the Settlement of War Claims Act of 1928.

In August 1928 the petitioner received $352,341.77 as payments on account of the award of the Mixed Claims Commission. In 1928 the petitioner paid the sum of $40,184.17 for legal services under an agreement whereby a percentage would be paid out of and on receipt of payment on account of the award. In its income tax return for 1928 the petitioner did not deduct the said sum of $40,184.17.

On June 30, 1928, the petitioner entered into contracts for the construction in an American shipyard of two coal-carrying, ocean-going steamships, with a coal-carrying capacity of substantially 6,500 tons each, named *Berwindglen* and *Berwindvale*, to replace the S.S. *Wilmore*, which had been an ocean-going vessel having a coal-carrying capacity of approximately 10,000 tons, intending to apply to such construction all sums to be received as payments on account of the award of the Mixed Claims Commission.

The total contract price of the new steamships was $1,496,800, payable in installments as the work progressed, and, including extras and additions, the total cost of these steamers to December 31, 1931, was $1,683,018.34. Payments by the petitioner under the contracts during the year 1928 amounted to $484,652.57. The new steamships have since been completed and are now in service and owned by the petitioner.

The petitioner kept its books of account and made its tax returns on the accrual basis, and its return for the calendar year 1928 was so made. In the return filed for the year 1928 petitioner recited that the reason payments on account of the award of the Mixed Claims Commission were not included in gross income was because it believed that they were not to be included therein under section 112 (f) of the Revenue Act of 1928.

Petitioner, after deducting the fees paid for obtaining the award and for obtaining payment on account thereof, applied the balance of the payments to the cost of the new steamers on its books, claiming that this was the proper way to treat the amounts so recovered, by application of section 112 (f) of the Revenue Act of 1928.

The respondent computed the deficiency here in controversy by including in the petitioner's gross income for 1928 the entire principal of the award of the Mixed Claims Commission in the amount of $650,000, plus accrued interest to January 1, 1928, in the amount of $297,041.10, and plus interest accrued for the taxable year of $40,785.33, less miscellaneous expenses of $1,770.56 and legal expenses in the amount of $40,184.17.

The petitioner having recovered insurance in 1917 in excess of the cost to it of the *Wilmore*, it follows that the entire amount of the payments made in 1928 on account of the award of the Mixed Claims Commission, less the expenses incurred in that connection, represents gain derived by the petitioner in that year from the involuntary conversion of its property in the steamer and is accordingly taxable on the full amount unless petitioner comes within the exceptions of section 112 (f) of the Revenue Act of 1928.

Section 112 (f) of the Revenue Act of 1928 provides as follows:

SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) *General rule.*—Upon the sale or exchange of property the entire amount of the gain or loss * * * shall be recognized, except as hereafter provided in this section.

\* \* \* \* \* \* \*

(f) *Involuntary conversions.*—If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain or loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized, but in an amount not in excess of the money which is not so expended.

No legislation granting special consideration to the owner of property involuntarily destroyed or sold appeared in the taxing statutes prior to the Revenue Act of 1921. However, on April 25, 1918, the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, issued a treasury decision (No. 2706) revising article 94 of Regulations 33 so as to provide for instances where property was destroyed, authorizing the establishment of a " replacement fund ", and making other appropriate provisions.

Section 112 (f) clearly specifies that replacement expenditures made from money received as the result of involuntary conversion must be devoted *forthwith* to the acquisition of other property similar or related in service or use to the property so converted, in order to entitle the taxpayer to the benefit of that section. In 1917 the petitioner received $1,750,000 in cash as compensation, through insurance, for the loss of its steamer. That amount was more than the original cost and more than was required to construct two new steamers in 1928. The petitioner took no steps " forthwith " or at any time to apply that sum or any part of it to the acquisition of a steamer to replace the one lost. The record discloses no intent on the part of the petitioner, at the time of the loss or within a reasonable time thereafter, to replace the torpedoed ship. That the construction of two new ships in 1928 was not a compliance with the statute as to the insurance money seems too clear to require argument in support. The petitioner established no replacement fund, nor did it, during a period of over 10 years, indicate in any manner its purpose to replace the lost ship.

The statute required, as a condition precedent to coming within the exception to the general rule stated in section 112 (a), that the

petitioner must comply with the regulations established by the Commissioner with the approval of the Secretary. This the petitioner failed to do. *Eastern Steamship Lines, Inc.*, 17 B.T.A. 787.

The petitioner's counsel contends that the destruction of its ship by Germany resulted in two separate and distinct transactions of conversion, i.e., the collection of the insurance money and the payment of damages by the Mixed Claims Commission. He asks us to disregard the receipt of $1,750,000 proceeds of insurance and permit the petitioner to receive the full benefit of the statute as to the award made 10 years thereafter. We find ourselves wholly unimpressed by this contention. The ship was destroyed in 1917. At that time petitioner's property was converted into money in the form of insurance proceeds. The full cost of the ship and more was received. No steps were taken to replace the ship out of the money so received. Ten years pass and in 1928 an award is made by the Mixed Claims Commission. Before the award is paid petitioner contracts for two new ships at a cost less than the insurance proceeds. Petitioner asks us to ignore the earlier transaction and hold that there has been forthwith an expenditure in the acquisition of property similar or related in service or use. This we are unable to do. Both sums of money received had their origin in the destruction of the vessel in 1917. To get an accurate picture, the entire story must be told and taken into account. When this is done the fallacy of petitioner's reasoning is plain.

But, assuming the correctness of petitioner's theory, the record does not clearly identify the payments on the petitioner's contracts of June 30, 1928, with the amounts received under the award in August 1928. It is not stipulated as a fact that the payments received from the award were actually applied to the installments due under the contracts. The stipulation merely recites that the petitioner " intended to apply to such construction all sums to be received as payments on account of the award." The stipulation further states that " after deducting said fees paid for obtaining the award and for obtaining payment on account of said award, the petitioner applied the balance of the payments to the cost of the new steamers *on its books*, claiming that this was the proper way to treat the amounts so recovered by application of section 112 (f) of the Revenue Act of 1928." (Italics ours.)

In this situation it is impossible to determine whether the petitioner paid such installments to the shipbuilding concern out of its own funds and replaced the payments with the proceeds of the award, or applied the award directly. The natural inference supports the first view. Petitioner's contract for the new ships antedated the receipt of any payment on account of the award. Thus

were there no other obstacle we could not say that the petitioner expended the proceeds of the award in the acquisition of other property similar or related in service or use. *Louis Bandes*, 28 B.T.A. 99; affd., 69 Fed. (2d) 812.

We hold that petitioner has not established that it comes within the favor of section 112 (f) of the Revenue Act of 1928 or any prior similar provision.

The petitioner is entitled to deduct the sum of $40,184.17 paid in 1928 for legal services in connection with prosecuting its claim before the Mixed Claims Commission. Only the sums actually paid in that year under the award may be included in the petitioner's gross income.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

TRAMMELL, dissenting: I am unable to concur in the conclusions reached by a majority of the Board in this case for two principal reasons. In the first place, the prevailing opinion treats the incidents occurring in 1917 as not constituting a completed transaction for tax purposes, and takes into consideration the proceeds of insurance collected in that year in determining the amount of the gain to be included in gross income for 1928.

In the second place, the majority view is based upon the theory that only one conversion of the petitioner's property in the S.S. *Wilmore* occurred. Neither of these propositions, in my opinion, can be sustained.

In 1917, when the petitioner's steamer was destroyed by the German submarine and petitioner collected proceeds of insurance in the amount of $1,750,000, it was not then known nor could it have been known with reasonable certainty how the World War would terminate, or whether the petitioner would ever be able to collect damages from Germany on account of that incident. In these circumstances the transaction then became closed and completed, in so far as concerned the recognition of gain or loss for tax purposes, under the doctrine proclaimed by the Supreme Court in *United States* v. *White Dental Mfg. Co.*, 274 U.S. 398. In that case the sole question presented was the right of the taxpayer to deduct from its gross income for 1918 the amount of its investment in a subsidiary German corporation whose entire property was seized in that year by the German Government as enemy property. The Commissioner contended that the transaction was not closed and completed in 1918, since an award was made by the Mixed Claims Commission in 1924 in part compensation for such loss. In holding that the transaction was closed and

completed for tax purposes in 1918 and the entire loss deductible in 1918, the Supreme Court said:

* * * a loss may become complete enough for deduction without the taxpayer's establishing that there is no possibility of an eventual recoupment. It would require a high degree of optimism to discern in the seizure of enemy property by the German government in 1918 more than a remote hope of ultimate salvage from the wreck of the war. The taxing act does not require the taxpayer to be an incorrigible optimist.

The transaction of 1917, involved herein, consisting of the destruction of petitioner's steamer and the recovery of proceeds of insurance in excess of the cost of the steamer, constituted a closed and completed transaction, and in reporting in its return for 1917 the taxable profit derived, the petitioner was not only within its legal rights, but was required by the existing law to do that very thing. Neither in 1917 nor in 1918 prior to the date on which returns were required to be filed for 1917 was there any provision in the tax laws or regulations then in effect by which gain or loss from the involuntary conversion of property could escape recognition for tax purposes. Such regulations were first approved by the Commissioner on April 25, 1918, in T.D. 2706, and the respondent now argues that the petitioner could have availed itself of those provisions by filing an amended return. I think this is immaterial. Even under the present law a taxpayer is not required to replace property involuntarily converted into cash, but may at his option include in taxable income any gain derived or deduct from gross income any loss sustained.

In my opinion also the facts of this case established two separate and distinct conversions into cash of the petitioner's property in the S.S. *Wilmore*, although resulting from a single act of destruction. In 1917 a part of its property rights in the steamer was converted into cash, measured by the proceeds recovered under the insurance contract. The cash acquired by this conversion the petitioner did not elect to use for the purpose of replacing the destroyed steamer, but treated the transaction as closed and completed, and reported the profit derived in its return for 1917. There is no controversy respecting the amount of the profit so reported, nor the correctness of the petitioner's act in so doing.

In 1928 the remainder of the petitioner's property rights in the S.S. *Wilmore* was converted into cash to the extent of the payments received in that year on account of the award of the Mixed Claims Commission. The cash received from this conversion the petitioner forthwith in good faith expended in the acquisition of other property admittedly similar or related in service and use to the property so converted.

If the petitioner had owned two steamships, one of which was involuntarily converted into cash in 1917 and not replaced, and the

other involuntarily converted into cash in 1928 and forthwith replaced, it would hardly be contended that any profit realized on the latter transaction would be recognized for tax purposes under the statute.

Obviously such would be the rule if a taxpayer owned a building equipped with machinery, having a policy of insurance on the building and a separate policy on the machinery. Upon destruction by fire, the taxpayer might elect to take his loss or report his profit on the involuntary conversion of the building, and forthwith replace the machinery with the proceeds of the other policy of insurance. On the latter transaction no profit or loss would be recognizable.

In the supposed case, two separate conversions of the taxpayer's property occurred, both resulting from the same casualty, and with only one replacement. So here there were two wholly separate and distinct involutary conversions into cash of the taxpayer's property in the steamship, and in my opinion the petitioner has the right of election under the statute to treat them separately.

In *International Boiler Works Co.*, 3 B.T.A. 283, a situation was presented similar in principle to the instant case, and the respondent there urged substantially the same argument as here. That case involved section 234 (a) (14) of the Revenue Act of 1921, which, with the exception of minor differences unimportant here, is comparable to section 112 (f) of the 1928 Act. In our opinion, at p. 291, we said:

The Commissioner urges that, if section 234 (a) (14) is to be applied, the taxpayer must treat all the amounts received as insurance for the destruction of its property as a single sum, and that it may not segregate the amounts received under different policies for different properties and select those which it desires to subject to the general gain or loss provisions and those to which it desires to apply the provisions as to involuntary conversion.

We see nothing in the statute to require treatment of the proceeds as a unit. If a taxpayer, for example, has two separate plants, on each of which it received a specified amount upon destruction or condemnation, there is no reason why it may not apply the one specific amount to the reconstruction of the one plant, claiming under section 234 (a) (14), and determine its gain or loss upon the other without reconstruction. The provisions of section 234 (a) (14) are relief provisions by which a taxpayer may postpone the taxation of so much of the gain derived from an involuntary conversion as it uses in replacement. It may not be permitted to postpone the taxation of gain derived from the conversion of one piece of property merely because it elects to use the proceeds in replacing another piece of property. On the other hand, the Commissioner may not deny it the deduction of a loss in the one case if the taxpayer elects to keep the two funds separate.

In the instant case the majority opinion in effect treats as a unit the proceeds of insurance, received in 1917, and the proceeds of the award of the Mixed Claims Commission, received in 1928, notwithstanding the taxpayer elected to keep the two funds separate.

Since the deficiency determined by the respondent in this case results wholly from the inclusion in petitioner's gross income for 1928 of gain derived from an involuntary conversion of property, not recognizable for tax purposes under section 112 (f), *supra*, in my opinion the respondent's action should be reversed and we should hold there is no deficiency.